**Kenneth Oda, et al., Plaintiffs-Appellants, v. Highway Insurance Company, et al., Defendants-Appellees.**

**Gen. No. 48,732.**

First District, Third Division.

November 6, 1963.

William C. Wines and Allen S. Gerrard, both of Chicago, for appellants.

Peter Fitzpatrick, of Chicago, for appellee, Highway Insurance Company.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a decree in a declaratory judgment proceeding denying plaintiffs the relief sought. Multiple parties and multiple causes of action are involved. The principal plaintiffs-appellants are Rae Naiditch, individually, and Irving Naiditch and Saul R. Bernstein, as executors of the last will of Albert Naiditch, and Kenneth Oda (insured plaintiffs). The principal issue involves the duty of a public liability insurer where conflicts of interest arise between

237

insurer and insured and between the insured codefendants in personal injury suits.

Albert and Rae Naiditch together with Kenneth Oda were the defendants in personal injury suits in which judgments on verdicts totaling $255,000 were entered pursuant to directions of the Supreme Court of Illinois (Dini v. Naiditch, 20 Ill2d 406, 170 NE2d 881). They were insured under a policy issued by the principal defendant, Highway Insurance Company (the insurance company). This policy limited liability to $50,000 with respect to one person and $100,000 for each accident. Notwithstanding the limitation, the insured plaintiffs maintain that the insurance company is liable to them for the difference between the amounts limited by the policy (which the insurance company has paid) and the total amount of the judgments. The principal basis for this claim is that there were conflicts of interest between the Naiditches and Oda and that the insurance company, by failing to employ counsel to represent each of them exclusively, breached the covenant of its policy. Gino Dini and Elizabeth Dini, his wife, and Lillian M. Duller, administratrix of the estate of Edward Duller, who were the plaintiffs in the personal injury cases, and James Dooley, the attorney in the personal injury cases, are also parties defendant in the suit now before us.

The complaint consisted of five counts. Counts 1 and 2 related to the alleged failure of the insurance company to properly defend the insured plaintiffs in the personal injury suits. Count 3 related to the claim of the A.A. Store Fixture Mart Co., Inc., a tenant in the building hereinafter referred to, also a party plaintiff, which sought to hold the insurance company liable for property damages sustained by it. The chancellor sustained the insurance company's motion to strike the three counts and dismissed them for want of equity. The fourth count charged vexatious delay

238

on the part of the insurance company in failing to pay its admitted obligation under the policy in due time and sought to recover attorneys' fees. The chancellor granted defendants' motion and entered summary judgment on that count. The fifth count sought to charge the company with an obligation to defend the insured plaintiffs against a suit of Elizabeth Dini, the wife of Gino Dini, for loss of consortium. To this, defendants filed a counterclaim supported by an uncontroverted affidavit. The chancellor held that the insurance company was no longer required to defend that claim, having paid out the maximum amount provided in its policy with regard to claims arising out of injuries sustained by Gino Dini. It is from these orders that this appeal is taken.

In arriving at his decision the chancellor took into account not only those averments well pleaded in the complaint, but also the facts stated in the opinion in Dini v. Naiditch, 20 Ill2d 406, 170 NE2d 881, and those admitted by counsel before the trial court. The court also took into consideration the uncontroverted averments of an affidavit filed in support of defendants' motion for summary decree as to Counts 4 and 5 and as to defendants' counterclaim to Count 5.

The personal injury suits were the outgrowth of a fire which occurred on April 28, 1955 in a building at the intersection of Milwaukee Avenue and Green Street, in Chicago, in which one fireman, Gino Dini, was injured and another, Edward Duller, was killed. The building, constructed in 1896, consisted of four floors and a basement. It was owned by Albert Naiditch and Rae Naiditch (landlords) in joint tenancy. (They were actually beneficiaries under a trust, but were treated by all parties as the owners.) The second, third and fourth floors, adapted for use as a hotel, apartment hotel or lodging house, were leased to Thomas Sato and Mary Sato, his wife, and Ted Oda,

none of whom are parties to the instant suit. Kenneth Oda, although not a party to the lease was a partner with the lessees in the operation of the hotel with the knowledge and consent of the landlords. The fire broke out in that portion of the premises operated by Oda and his partners.

After the fire, the following suits were brought against Albert Naiditch and Rae Naiditch, Thomas Sato and Mary Sato, his wife, and Kenneth Oda:

(1) a suit by Gino Dini for personal injuries;

(2) a suit by Lillian M. Duller, as administratrix of the estate of Edward Duller, under the Illinois Injury Act, for damages due to the death of her husband; and

(3) a suit by Elizabeth Dini for damages due to the loss of consortium resulting from the injuries to her husband.

Upon the death of Thomas Sato, the suits against him and his wife were voluntarily dismissed.

Liability in the personal injury cases was based principally on the charges that the Naiditches and Oda were guilty of the following acts of negligence:

(1) the storage of benzine and paint in close proximity to a stairway which collapsed and caused the death of Duller and the injury to Dini;

(2) violation of certain provisions of the Municipal Code, requiring that structures such as the premises in question have enclosed stairwells, *fire-doors* and fire extinguishers, and specifying that oil rags and waste be kept in approved waste cans of heavy galvanized iron with self-closing covers during the day and be removed at night, and that rubbish not be allowed to accumulate in any part of the building. (Emphasis added.)

A more complete statement of the facts is contained in the opinion in Dini v. Naiditch, supra.

Following institution of the suits, the insurance company, being advised by the insured plaintiffs of the service of summons and of the complaints, wrote substantially identical letters to them, as follows:

"October 1, 1956.

"Dear Sir:

This will acknowledge receipt of summons in the above matter, and we have referred the same to our attorney, Mr. Robert L. Brody, 330 South Wells Street, Chicago, Illinois.

Mr. Brody now advises us that the complaint heretofore filed against you is for the sum of $300,000. An examination of our policy, to-wit: GL 55815 reveals that our policy limits are in the sum of $50,000 for injury to one person.

This is therefore to advise you that in the event a judgment is rendered in the above cause in excess of our policy limits you would be liable for any sum over the aforementioned policy limits.

Please be further advised that if you so see fit, you may retain counsel at your own expense to associate with our attorney, Mr. Brody, so as to protect your interest. However, in the event that you do not desire to retain your own counsel, please rest assured that our attorney will do everything in his power to protect the interest of all parties."

The cases of Gino Dini and Lillian M. Duller were consolidated for trial, and two lawyers were selected by the insurance company to represent the Naiditches and Oda. *The Naiditches also employed their own lawyer,* who participated in the trial of the case on

241

their behalf. Thus there were three lawyers for the defense. Oda did not engage a lawyer of his own. The case was submitted to a jury, and verdicts were returned in the sum of $235,000 in favor of Gino Dini and $20,000 in favor of Lillian M. Duller. The trial court, however, entered judgments n.o.v. in favor of the Naiditches and Oda, on the theory that landlords and operators of a hotel are not liable to city firemen for the negligent maintenance of their premises, in violation of city fire ordinances. The court also dismissed the consortium suit of Elizabeth Dini, on the theory that a wife is not entitled to damages for the loss of consortium because of negligent injury to her husband.

After the verdicts a fourth lawyer was employed by the Naiditches who represented them on the argument of the post-trial motions and in the Supreme Court. A portion of his fee was paid by the insurance company. A combined appeal was taken to the Supreme ' Court, and that court by a vote of four to three reversed and remanded with directions to the trial court to reinstate the jury verdicts in favor of plaintiffs Gino Dini and Lillian M. Duller and to adjudicate the complaint of plaintiff Elizabeth Dini. Following the reinstatement of the verdicts the trial court entered the judgments hereinbefore referred to.

All of the defendants in the Dini case were insured under one policy issued by the insurance company, in which the insurer agreed:

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined."

Coverage was limited to bodily injury liability only and, as we have hereinbefore said, to the extent of $50,000 for injury to one person and $100,000 for injuries arising from one accident. The insurer also agreed to:

> ". . . defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

██ It is argued on behalf of Oda that the letter hereinbefore quoted, acknowledging receipt of summons in the suits, and particularly the last sentence thereof, which stated that the recipients could rest assured that the attorney engaged by the insurance company would "do everything in his power to protect the interest of all parties," amounted to an assurance to Oda that he would be represented by counsel who would serve "only his legitimate interest and not those of codefendants who had very substantial interests adverse to him."

The letter contained the essential elements of notice which the insurance company should have given under the circumstances, to wit:

(1) that the complaint was for the sum of $300,-000;

(2) that the policy was limited to $50,000 for injury to one person; and

(3) that if the insured saw fit, they could retain counsel at their own expense to assist with the insurance company's attorney to protect their interests.

243

No more could be expected. Murach v. Massachusetts Bonding & Ins. Co., 339 Mass 184, 158 NE2d 338 (1959). This letter, designed to advise the assured that the limitation of the insurance company's liability was less than the sum sued for, cannot be construed as a voluntary assumption by the company of an obligation not expressed in the policy, nor did it exclude the prospect of a joint defense.

The Naiditches obviously understood the letter, for they proceeded to employ their own lawyer who participated in the trial of the case. Oda must have understood its significance and must have observed that the Naiditches engaged their own lawyer. It is urged that the insurance company should have informed Oda that the Naiditches were contending that sole responsibility for violation of the fire ordinance rested on the tenants (lessees) and that they were making that contention through lawyers employed by them. It is also argued that the insurance company should have advised the respective parties of their duties under the indemnity and exculpatory clauses of the lease. We cannot assume that the Naiditches and Oda were completely ignorant of the obvious and patent facts of the case. If they were, it was their duty to become informed.

 The duties of general counselorship cannot be imposed upon a public liability insurer to advise each of several insureds not only of the conflicts presented by the limitations of the policy, but also with respect to the rights and duties as between the various insureds themselves. There is no basis in law for the imposition of such a duty. The duty of an insurance company with respect to legal representation is limited to those matters in which it had an interest by reason of its position as an insurer. Utilities Ins. Co. v. Montgomery, 134 Tex 640, 138 SW2d 1062 (1940).

■ Where, however, a conflict of interest arises between the insurer and the insured, each owes a duty to respect the rights and interests of the other and to approach the common problem "realistically with open hands and without concealed weapons." Traders & General Ins. Co. v. Rudco Oil & Gas Co., 129 F2d 621, 628 (Okla, 1942). Both the insured and the insurer had a responsibility. Neither could stand by and observe the course of the proceedings and then, after an unfavorable result, for the first time complain of the nature of the defense. It is in this light that we should consider the charge that the insurance company breached its contract faithfully to defend the Naiditches and Oda in the personal injury case, in that it employed two lawyers to represent both.

It is argued that it was, in the words of the plaintiffs' brief, "to the obvious interest and advantage of Oda and Sato to contend that the spread of the conflagration . . . was due to the Naiditches' failure to obey the Chicago Fire Ordinance and not to the presence of a small quantity of benzine that, if it were on the premises in violation of the lease, could not have caused the fire or contributed materially to its spread." Then, as to the Naiditches, it is argued that as they denied there were any violations of the fire ordinance, it was to their interest and advantage to contend "that the fire, if it was not an avoidable accident, was both originated and caused to spread by the negligence of the tenants, the Odas and the Satos, who were in exclusive possession of the premises in which the fire occurred, and whose negligence touched off and caused the spread of the holocaust of flames that killed two people and injured a number of others."

On the other hand it is the theory of the insurance company that there was no conflict of interest between the Naiditches and Oda. It argues that both were

245

charged with the same acts of negligence in the personal injury case, and there is no allegation in the insured plaintiffs' complaint that there was an actual dispute between the Naiditches and Oda regarding the circumstances of the fire.

The insured plaintiffs admit that the complaint in the personal injury case charged both the landlords and the "tenants" (lessees) with the same acts of negligence but, they say, it was this very charge which precipitated the conflict of interest, because although both denied the charges, the landlords, represented by the insurance company's lawyers, contended that if there was negligence at all, it was that of the lessees alone, while the lessees, represented by the same lawyers, contended that if there was negligence, it was that of the landlords alone. They quote from the opinion in Dini v. Naiditch, supra, at 430–31, in which the Supreme Court held it was the province of the jury to determine "whether to give greater credence to the testimony of the defendant *building owner and lessee,* or to the testimony of the *tenants* and the fire and police department officials as to the condition of the premises." (Emphasis supplied.) From this language of the Supreme Court the insured plaintiffs argue that the court recognized there was an irreconcilable conflict in the testimony of the landlords, on the one hand, and that of the *tenants,* on the other hand, and that the court, by a bare majority, gave "emphatic force" to the admissions of Albert Naiditch, and that this revealed the clear conflict of interest with respect to the "tenant" Kenneth Oda.

The foregoing argument is based on the mistaken assumption that when the Supreme Court used the word "tenants" in that connection, it included Oda as such. The fact is that when the court referred to "tenants," it did not mean Oda, whose interest was derived as a partner of the lessees. It was referring

to the occupants of the rooms (roomers), as distinguished from the lessees, who were Oda's partners. There was no such conflict of interest between Oda and the Naiditches. It is difficult to conceive of a situation in which Oda, a partner in the actual operation of that part of the premises used as a hotel or rooming house (where the fire started) would not be liable for neglect and/or violation of the ordinances relating to fire hazards, but that the landlords, the Naiditches, would.

What we derive from the Supreme Court opinion is that there was overwhelming evidence produced by the *roomers* and the fire and police department officials that both the landlords and the lessees (which would include the plaintiff Oda) were guilty of negligence and violations of city ordinances which contributed to cause the fire. A summary of that portion of the Supreme Court's opinion describing the condition of the premises is contained in a subjoined note.[1]

---

[1] Next to an office maintained by Kenneth Oda and Tom Sato, and some 17 or 20 feet from the stairwell was a storage room in which, according to the uncontroverted testimony, paint and benzine were kept, including at the time of the fire a can of benzine and numerous paint cans, brushes and rags, despite a provision in the lease that no naphtha, benzine or other enumerated flammable products were to be kept without the written permission of Naiditch. The lease contained a provision that the lessees would spend an average of $1500 annually for the maintenance and improvement of the premises and would give Naiditch monthly itemizations of their expenditures. Lessees failed to do so and Naiditch's attorney wrote to Oda and Sato, demanding that repairs be made and then filed a lawsuit to evict the lessees, as a result of which $1500 was put in escrow for repairs. The lease required Naiditch to inspect the hotel once a month, but he admitted he did not make such regular inspections. There were oil drums converted into open garbage cans in the *hotel* corridors. They were emptied only two or three times a week, and paper and other waste was piled in the corridors. The walls were cracked and rain leaked through. There was evidence that prior to the fire, the attention of the Naiditches and Oda had been called to nine separate violations of city ordinances in the

It is apparent from this summary that the Supreme Court was of the opinion that the case against both Oda and the Naiditches was a strong one.

Assuming that conflicts existed, to what extent was it required that separate attorneys be selected to represent each defendant? Not every conflict of interest demands separate representation. There are circumstances under which such a course would be fatal to the cause of both clients. A traditional truism among lawyers is that nothing can be more ruinous to the defense of cases such as the personal injury cases here involved than for one defendant to seek to prove the liability of the other. On such occasions the plaintiff's lawyer sits by and watches the show as one defendant slaughters the other, while the court, observing the spectacle, meditates on the folly of the defendants in not having agreed on a policy of cooperation, even though it meant that each had to assume some degree of risk thereby.

The Civil Practice Act is designed to encourage the joinder of causes of action, even though a defense is thus made difficult and complicated. The defending lawyers had to take the case as they found it and had to determine whether it was in the defendants' best interests to join forces or for each to throw the blame on the other. They decided to unite forces. When we consider that these lawyers succeeded in persuading the trial court to enter judgments n.o.v. and that they lost in the Supreme Court by the narrow margin of

building. There was also testimony that on the night of the fire, two garbage cans on the first floor of the hotel were full and overflowing and that paper was piled a foot high on the floor; that three or four garbage cans on the fourth floor were full, and there was paper piled around the cans; that there were no fire doors, according to the testimony of the deputy fire marshal who made a minute inspection of the premises after the fire, and of the chief building inspector and division fire marshal, nor were there any fire extinguishers of any kind in the hotel. (Emphasis added.)

248

four to three, we might well comment on how thin the line may be which divides success from failure and how cautious a court must be in imposing liability because of failure.

The insured plaintiffs quote extensively from All-state Ins. Co. v. Keller, 17 Ill App2d 44, 149 NE2d 482, where this division held that if the attorney for an insurance company wilfully fails to disclose a conflict of interest between the insured and the company in order to protect the company at the expense of the insured, the company could not disclaim liability under the policy. There, the insurance company filed an action seeking to avoid liability under its policy covering automobile accidents, on the ground that the insured did not comply with the provisions requiring his cooperation in that he failed to disclose the true identity of the person driving the automobile at the time of the accident. The company by its attorney conducted an investigation for the purpose of supporting its claim that it was not liable under its policy. The investigation covered a long period of time during which the insured rested secure in the belief that full responsibility for his defense had passed to the company. During that period the attorneys hired by the company, although aware of the conflict of interest between the company and the insured, continued to represent the insured in the personal injury action and then sought a declaratory judgment seeking to be relieved of liability because of the failure of the insured to cooperate. This court found that the insured had failed to cooperate, but that the extended delay in informing him of the company's intention to deny liability under the policy constituted a waiver of the breach of the cooperation provision. That is the heart and substance of the decision, and it has no application to the instant case.

249

Plaintiffs also quote at length from a "Statement of the Illinois State Bar Association Regarding Representation of Insureds by Salaried Employees of Insurance Corporations," in which various aspects of conflicts of interest between an insurance company and an insured are discussed. The statement is devoted mainly, as its title indicates, to the employment of "house counsel," which has been the subject of much discussion at the bar. It has been argued that it would be to the advantage of the public as well as lawyers generally if legal work, instead of being undertaken by house counsel, as it sometimes is, went to private firms. Insurance companies insist they have the legal right to defend their financial interests by attorneys on a retainer basis or on salary, as they choose. The question is not before us, and we express no opinion.

Nor is the doctrine of Olympia Fields Country Club v. Bankers Indemnity Ins. Co., 325 Ill App 649, 60 NE2d 896, cited by plaintiffs, applicable. There, the court stated the principle that an insurance company which is guilty of fraudulent conduct or lack of good faith in refusing to settle can be liable for the entire judgment rendered against an insured, even in excess of the policy limits. It is of no help in the solution of the issues involved here.

The insured plaintiffs finally charge that the conduct complained of amounted to a breach of confidential relationship and therefore the burden is not upon them to prove loss or damages as a prerequisite to recovery. They desire to make their case without proof of the necessary elements of a case based on negligence or malpractice, although they so characterize the conduct of the defense. In a suit based on negligence it is required that the plaintiff prove that the original judgment would not have gone against him, except for such negligence. Priest v. Dodsworth, 235 Ill 613, 85 NE 940; Kimen v. Ettelson, 303 Ill App

230, 24 NE2d 871 (Abst); Getchell & Martin Lumber Mfg. Co. v. Employers' Liability Assur. Corp., Ltd., 117 Iowa 180, 90 NW 616 (1902).

It is true that an attorney occupies a confidential relationship in transactions with his client and that the burden is upon him to show that the transaction was fairly entered into. Where the charge is made, however, that an attorney in the course of handling litigation or other affairs for a client has been guilty of malpractice or negligence of the nature here charged, the rule is as stated in the cases hereinbefore cited, that the client must prove that except for such malpractice or negligence, the original judgment would not have gone against him. This rule governs the instant case.

The cases cited by plaintiffs to support their position are far removed in circumstances from the instant suit and have no bearing on the question. For example, in McFail v. Braden, 19 Ill2d 108, 166 NE2d 46, cited by plaintiffs, the court held that where a grantor, 83 years old and in poor health, sought the advice of an attorney to ascertain how she might be relieved of the responsibilities of managing her property and was induced by him to convey the property to his secretary, who then reconveyed it to the grantor and the attorney's son as joint tenants, there being evidence that the grantor did not fully comprehend the consequences of her deeds, the burden was upon the attorney to prove the fairness of the transaction.

Bigelow v. RKO Radio Pictures, 327 US 251 (Ill, 1949) also cited by plaintiffs, was a case in which the plaintiffs sued for damages resulting from violations of the Sherman Anti-Trust Act and the Clayton Act. The court held that by reason of the defendant's tortious act the petitioners were unable to prove what their earnings would have been under freely competitive conditions, but this did not preclude a verdict on

251

the evidence which *was* presented with respect to damages. That case is not applicable to the circumstances in the instant case.

█ It is our conclusion that the decision of the lawyers in the personal injury cases to present a joint defense does not afford a basis for charges of malpractice, negligence, lack of good faith or breach of confidential relationship, to use the various characterizations employed by plaintiffs.

We note with not wholly irrelevant interest the statement in plaintiffs' brief that the Naiditches and Oda no longer have inconsistent interests and, being fully advised of their rights, have now joined forces; that is, have engaged the same lawyers for the prosecution of the instant suit. It is true that the interests of the Naiditches and Oda in the suit now before us are identical in that both desire to attain the same objective, that is, to compel the insurance company to pay the full amount of the judgments. The argument to be made for each, however, is quite different and as hereinbefore revealed, they run into direct conflict with each other. Nevertheless, their attorneys, with no indication of abashment and with due skill, have stated the case for both even though it required that they state the opposite contention for each, somewhat in the same manner as they charge the attorneys in the personal injury case with having done on the trial of that case.

One particular aspect of the actual trial of the personal injury case is set forth as supporting the general charges, and that is the failure of the defense to call Rae Naiditch to the witness stand to corroborate testimony that there were fire doors in the building at the time of the fire. Putting a witness on the stand to corroborate other testimony is a matter so completely dependent upon the judgment of attorneys (and, again, it must be noted that the Naiditches had their own attorney) that we see no merit in this point.

We have no doubt that the lawyers who defended the case had many afterthoughts concerning the value of the testimony of some witnesses and their failure to use others. They probably had some of the hindsight now so ardently employed by plaintiffs' counsel here.

■ ■ Plaintiffs charge the insurance company with failure to make inquiry as to what sum, even in excess of the limits of the policy, Gino Dini and Lillian Duller would have accepted in settlement of their respective claims. Attorneys for the insured plaintiffs told the trial court they had been advised by the attorney who represented the personal injury claimants that he would not have accepted in settlement any amount within the limitation of the policy. Nevertheless, it is argued that the insurance company owed the plaintiffs a duty to inquire what sum, even in excess of the policy limits, the claimants would have accepted in settlement. The right of an insurance company to furnish legal services is limited by its contractual obligation. It may not undertake to furnish services beyond its contractual obligations because, as has been said in some cases, it would thereby become "an intermeddler in the contests of others and [guilty] of unlawfully practicing law." Utilities Ins. Co. v. Montgomery, 134 Tex 640, 138 SW2d 1062 (1940); In re Brotherhood of Railroad Trainmen, 13 Ill2d 391, 393, 395, 150 NE2d 163, 166. It is not the duty of an insurance company to initiate negotiations for the settlement of a case. To impose such a duty upon it would be to put it at a negotiating disadvantage not imposed on any other litigant, particularly where, as in the instant case, it was stated to the chancellor as an admitted fact that the case could not be settled within the limits of the policy. It is our conclusion that the trial court properly sustained the motion and dismissed Counts 1 and 2 for want of equity.

■ The third count seeks to charge the insurance company with liability for property damages suffered by the A.A. Store Fixture Mart Co., Inc., a corporation, which occupied the first floor and part of the basement of the premises. The insurance policy did not provide property damage coverage, and we see no basis for this claim.

■ The fourth count charges the insurance company with failure to pay its admitted obligation under the policy in due time, and seeks to recover attorneys' fees in accordance with the statute (Ill Rev Stats, c 73, § 767 (1961)) because of what it charges to be the vexatious delay of the insurance company. It is alleged that at the time this suit was instituted the insurance company had failed to pay the $50,000 to Gino Dini and the $20,000 to Lillian M. Duller which it did not deny it was liable to pay. Plaintiffs charge that the failure to pay was vexatious and therefore the insurance company must pay the attorneys' fees, as provided by statute. The company responded that it did not delay vexatiously and that payment has now been made. The trial court, on the basis of an uncontradicted affidavit, entered a summary judgment as to that count. It appears from the affidavit that immediately upon the entry of the judgment in the trial court the insurance company mailed to the attorney for Lillian M. Duller, administratrix, its check for $20,000 together with the interest then due. The check was paid by the bank on which it was drawn. When the judgment was entered in the Superior Court in favor of Gino Dini, the company mailed its check to the attorney for the amount of its policy limit, plus the interest due. It appears that the City of Chicago was included as a payee in the check because of an intervening petition it had filed asserting a claim against the funds. On April 10, 1961, the check was returned by Dini's attorney, who said the City of Chi-

cago should not have been named as one of the payees. Four days later, on April 14th, by agreement an order was entered by the trial court directing the company to deposit the sum of $71,906.78 with the Clerk of the Superior Court of Cook County—$50,000 as limited by the policy, plus interest on the entire judgment computed to that date. Defendant made the deposit. The insured plaintiffs admit there was a bona fide controversy, but say it related only to the question of interest, not to the principal due. They argue that when the Supreme Court denied the petition for rehearing in the personal injury case on November 30, 1960, the liability of the insurance company became final. This is correct, but nevertheless there is still the question whether, under the circumstances of this case, the delay in payment can be said to have been vexatious. We are of the opinion that the chancellor properly found that it was not.

 The fifth count seeks to charge the insurance company with a duty to defend against the claim of Elizabeth Dini for loss of consortium. The insurance company acknowledges that it was under a duty to defend the claim, but only until the $50,000 limit for claims because of injury to one person had been paid out. That amount having been paid on the judgment obtained by Gino Dini, the insurance company now argues that it is under no further obligation to defend the consortium suit. Plaintiffs' argument is as follows:

"We need not be concerned for a moment about the limits of the coverage of the policy . . . for since the defendant has completely breached its duty to all of the plaintiffs by not furnishing them separate counsel on the cases of Gino Dini and Lillian Duller, it is not only liable for the full amount of Gino Dini's judgment, but is not en-

255

titled to claim the amount of that judgment in diminution of coverage."

Inasmuch as we have found that the insurance company has not breached its duty to the plaintiffs by not furnishing them separate counsel, there is no basis for the claim with respect to Elizabeth Dini's suit. We hold that when the insurance company paid $50,000 on the judgment in favor of Gino Dini, there was no more coverage for claims arising from his injury, and that this includes the suit of Elizabeth Dini. Ravenswood Hospital v. Maryland Cas. Co., 280 Ill 103, 117 NE 485. Thereafter the insurance company no longer had any duty or right to defend against the claim of Elizabeth Dini arising from the same injury. Denham v. LaSalle-Madison Hotel Co., 168 F2d 576 (Ill, 1948).

The orders entered by the chancellor are hereby affirmed.

Orders affirmed.

McCORMICK and DEMPSEY, JJ., concur.