475 P.2d 520

**William K. TALBOT and Shirley Talbot, husband and wife, Appellants,**

v.

**Donald R. SCHROEDER, Appellee.**

**No. 2 CA–CIV 850.**

Court of Appeals of Arizona, Division 2.

Oct. 23, 1970.

Rehearing Denied Nov. 19, 1970.
Review Denied Jan. 12, 1971.

Messing & Hirsh, by William Messing, Tucson, for appellants.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Tucson, for appellee.

KRUCKER, Judge.

Plaintiffs, Shirley Talbot and her husband, brought an action for legal malpractice against Donald R. Schroeder. The court, sitting with a jury, directed a verdict for defendant. Plaintiffs' motion for a new trial was denied and plaintiffs therefore appeal.

The facts are as follows. Defendant undertook to act as Mrs. Talbot's lawyer in a divorce action when she was known as Mrs. Hall. Defendant filed a temporary restraining order against Mr. Hall and set time for hearing. In the interim, defendant contacted Mr. Hall's lawyer. Mr. Hall then filed a petition to have plaintiff declared mentally ill and she was taken to the county hospital. A week later, she was discharged as not being mentally ill.

While committed, Mrs. Hall, through her lawyer, signed papers authorizing bankruptcy proceedings as to the marital community. Sometime later, she signed a property settlement and child custody agreement providing for (1) the children to be sent to Labrador to stay with Mr. Hall's sister, (2) a sum to be paid as alimony if she attended nursing school, and (3) a general division of assets.

The divorce was granted. Sometime thereafter, Mrs. Hall remarried, and with the return of her health, sought a return of child custody which was granted. During the period when she was seeking their return, however, Mrs. Hall, now Mrs. Talbot, became physically and emotionally ill. She now sues defendant here for damages caused by the loss of her children, and her expenses, both medical and otherwise, in obtaining their return.[1]

In particular, plaintiffs make the following charges of malpractice:

1. Defendant failed to continue the restraining order so the husband could not hospitalize plaintiff.

2. Defendant did not get plaintiff released from the hospital.

3. Defendant had a conflict of interest in handling the bankruptcy for both Mr. and Mrs. Hall.

4. Defendant did not take depositions in the divorce action.

5. Defendant hurt his client when he let her sign over the children.

First of all, we do not believe evidence was presented indicating that any damages were sustained as a result of the first four alleged acts. Both the physician and attorney who testified for the plaintiffs exclusively referred to the child custody problem. We therefore proceed solely to a discussion of whether the claim relating to relinquishment of custody should have gone to the jury.

 The Arizona courts have long held that an attorney is bound to discharge his duties to his client with strictest fidelity and to observe the highest and utmost good faith. In re Baker, 102 Ariz. 346, 429 P.2d 665 (1967); In re Greer, 52 Ariz. 385, 81 P.2d 96 (1938). At the same time, an attorney is not liable to a client when acting in good faith, when he makes mere errors of judgment, or, for a mistake as to an unsettled issue of law. Martin v. Burns, 102 Ariz. 341, 429 P.2d 660 (1967); Annot.,

45 A.L.R.2d 5 (1956). Nor is he liable simply because his client becomes unhappy with the result. Eadon v. Reuler, 146 Colo. 347, 361 P.2d 445 (1961).

 Adverting to general negligence law in Arizona, we know that if evidence is presented, especially uncontroverted expert testimony, that negligence was the cause of the injury in question, there is sufficient evidence to sustain a verdict. Ray v. Bush, 89 Ariz. 177, 359 P.2d 764 (1961). The issues of fact must be submitted to a jury and the court cannot substitute its own conclusions. Apache Railway Company v. Shumway, 62 Ariz. 359, 158 P.2d 142 (1945); Shell Oil Company v. Collar, 99 Ariz. 154, 407 P.2d 380 (1965). Only if the facts are undisputed or such that all reasonable men must draw the same conclusion can the court direct a finding. Scott v. Scott, 75 Ariz. 116, 252 P.2d 571 (1953).

In the instant case, plaintiffs contend that Mrs. Talbot sustained damages as the result of having to fight to regain custody of her children. In particular, they refer to attorney's fees and medical and hospital bills, plus Mrs. Talbot's pain and suffering caused by the protracted contest to regain the children and her separation from them.

Mrs. Talbot's doctor testified that the custody problems did aggravate and in part cause her to need medical care and incur expenses. An attorney testified, as an expert, that her former lawyer, Mr. Schroeder, had indeed been negligent in advising and placing *permanent* child custody in the husband when the wife simply sought to have time to settle into a new life, and she was emotionally distressed.

Mrs. Talbot, on her own behalf, testified that she was emotionally upset. She also testified that defendant told her she was signing temporary and not permanent custody releases. She also testified that defendant did not know of her narcolepsy

---

1. Defendant has never been paid for the divorce services.

-condition because it was as yet undiagnosed. She testified defendant first suggested sending the children to the relatives because child support was probably unavailable. She contends she didn't like that idea, but when confronted with the prospect that the Welfare people would interfere if she couldn't support them, she was frightened into thinking about sending the children off. At their second meeting, she reiterated her dislike of the idea of sending the children away. She maintained this position for several visits. On the last visit, at which time she signed the agreement for permanent custody, she admitted she read it before signing it. However, she stoutly maintains defendant told her it provided for temporary custody.

The remainder of her testimony related to her difficulties in getting the children back. She testified that as a result of the custody problems, she was nervous and had terrible headaches. She became pregnant, but was aborted because of her emotional condition. She also suffered aggravation of her narcolepsy, thereby incurring hospital and doctors' bills. She also testified as to her legal fees in obtaining her children.

Defendant testified he knew Mrs. Talbot was upset throughout the divorce proceedings. The doctor who testified stated that Mrs. Talbot had narcolepsy and that she became worse when she was upset, which occurred when she was trying to regain custody of the children. He confirmed that she had undergone an abortion.

■ Given all this evidence, we believe a jury question was presented as to whether or not defendant was negligent in advising his client to relinquish permanent custody in view of her state of emotional upset, and under the circumstances of the facts presented.

Judgment reversed.

HOWARD, C. J., and HATHAWAY, J., concurring.