SPIVACK, SHULMAN & GOLDMAN, Plaintiff and Counterdefendant-Appellee, *v.* FOREMOST LIQUOR STORE, INC., Defendant and Counterplaintiff-Appellant.

First District (5th Division)   No. 82—3064

Opinion filed March 30, 1984.—Supplemental opinion filed on denial of rehearing June 22, 1984.

SULLIVAN, J., specially concurring.

Allen H. Schultz, of Chicago (Schultz & Schultz, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Gary A. Grasso, and Joanna Cowan New, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Spivack, Shulman and Goldman[1], a law partnership (the Firm), as plaintiff, filed a complaint for attorney fees against defendant Foremost Liquors, Inc., an Illinois corporation (Foremost). Foremost filed a two count counterclaim against plaintiff alleging that it suffered great monetary loss as a result of plaintiff's gross, wanton and negligent legal advice and plaintiff's failure to exercise reasonable care

---

[1]The law firm of Spivack, Shulman & Goldman is the successor to the firms of Spivack & Lasky, Spivack, Drobny & Nathan and Spivack & Drobny.

and skill. Plaintiff's motion for summary judgment as to count I was granted, and it is from that order that defendant appeals. The sole question for review is whether the trial court erred in granting plaintiff's motion.

In count I of the amended counterclaim, which was filed on May 7, 1982, defendant alleged that it was the owner and operator of a chain of four retail alcoholic liquor stores, and agreed orally on May 1, 1975, to retain the Firm to perform legal services on its behalf, in consideration of a monthly fee of $500 and that this relationship continued to exist until August 31, 1980, when it was severed by Foremost.

It further asserted that Foremost's lease for the store premises at 5236 West Touhy Avenue, Skokie, Illinois, was to expire on June 30, 1978, and the lessor, Jewel Companies, Inc. (Jewel), had implicitly advised Foremost that it would not renew the lease, as it intended to use the space for its own expansion purposes; that the Firm advised Foremost it need not vacate the premises on or before the expiration date; that the Firm further advised Foremost, contrary to Illinois law, that it could prevent Jewel from evicting Foremost in any forcible detainer proceedings by filing a counterclaim charging Jewel with violating the Illinois antitrust laws; and that in addition, the Firm guaranteed Foremost that, in the event it failed to enjoin Jewel, Foremost was certain to remain in the premises peacefully "for maybe a year, and for certain six months."

Foremost also alleged that on July 6, 1978, Jewel filed a forcible detainer action in the circuit court of Cook County; that on August 16, 1978, the court ordered Foremost to vacate the premises within 30 days, and post a bond for $25,000 to guarantee compliance; and that in order to comply with the court order, it was necessary for Foremost to dismantle the store fixtures and place them in storage, as well as return its inventory, valued at $200,000 to the wholesalers at invoice cost. Further, Foremost alleged that the Firm knew or should have known that it could not enjoin Jewel from evicting Foremost by filing a counterclaim charging Jewel with violating antitrust laws, and that the Firm should not have guaranteed that Foremost could remain in the premises after the lease expired.

Finally, Foremost claimed that the Firm's legal advice was grossly and wantonly negligent, and as a result of the Firm's failure to exercise a reasonable degree of care and skill, Foremost has incurred huge monetary losses.

On August 31, 1982, the Firm filed a motion for summary judgment on the amended counterclaim with supporting memorandum

and exhibits pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005). In support of its motion, the Firm asserted that Foremost instituted a chancery action in June 1978, prior to the Jewel forcible detainer, requesting an injunction against Jewel's enforcement of the June 30, 1978, lease expiration; that Gerald Robins, president of Foremost, verified to the court in this injunction matter that beginning as early as 1972, Jewel had on numerous occasions been in oral and written communication with Foremost or its counsel, concerning an extension of the lease beyond June 30, 1978, whereby Jewel indicated that they would extend the lease, but that their position suddenly changed as the expiration date drew near; that Foremost stipulated to the dismissal of this injunctive action in October 1978; and that Robins' statements were an impeachment of Foremost's malpractice claims since Foremost, some three years prior to its hiring the Firm, had begun to negotiate a lease extension, and had favorable responses to its requested extension.

The Firm also pointed out in its memorandum in support of its motion for summary judgment that the court denied Foremost's motion to consolidate the Jewel forcible detainer action with the suit for injunctive relief; that the Firm filed three affirmative defenses (oral contract, restraint of trade and estoppel) to the Jewel forcible detainer petition along with the antitrust counterclaim; that the court struck Foremost's antitrust counterclaim and the affirmative defenses of estoppel and restraint of trade on August 7, 1978; that a jury entered a verdict in favor of Jewel on August 23, 1978, in the forcible detainer action which included the disposition of the affirmative defense of the oral contract issue; and that the Firm filed post-trial motions and requests for stay of the forcible detainer judgment order, which were later denied.

Finally, the Firm's memorandum avers that Gerald Robins, president of Foremost, acknowledged as early as September 15, 1977, in a letter to Osco Drugs, that it would take a 30-month extension beyond June 30, 1978, to find an alternative site of business; and that Gerald Robins, in a letter to Osco Drugs written on April 18, 1978, less than 90 days before the lease expired, stated Foremost would not be able to make the move by June, and needed "at least several months additional time to make our move."

Thereafter, Foremost filed its memorandum in reply to the Firm's memorandum, which was supported by an affidavit of Leonard J. Robins, the current president of Foremost Sales Promotions. Foremost's memo postured that the gravamen of count I ex-

isted in the Firm's grossly negligent professional advice that, if the Firm failed to prevent an eviction by Jewel, it guaranteed Foremost that it would be able to remain in the premises "for maybe a year and for certain six months" after the lease expired on June 30, 1978.

Robins' affidavit recited *inter alia*, that on July 8, 1976, Jewel addressed a letter to Foremost advising, (1) that its lease was to expire on June 30, 1978, (2) that it will be obliged to vacate the premises on or before June 30, 1978, and that (3) Jewel intends to lease the premises to its affiliate, Osco Drugs, Inc., effective July 1, 1978; that immediately upon receipt of Jewel's letter, Foremost sent a copy to the Firm, and sought its advice regarding the possibility of negotiating with Jewel for a renewal of the lease; that although Robins and his son Gerald consulted with the Firm after July 8, 1976, it wasn't until May 13, 1977, that the Firm first wrote Jewel about Foremost's desire to remain on the premises after June 30, 1978; and that Jewel responded on May 16, 1977, informing the Firm it was adamant that Foremost vacate the premises on or before June 30, 1978.

In addition, the affidavit declared that the Firm proposed the following plan of defending any legal action Jewel might take to dispossess Foremost: (1) file a counterclaim against Jewel, also in the event that Jewel filed a forcible detainer action, to file an action to enjoin Jewel; (2) in the event that the Firm failed in its efforts to prevent Foremost's eviction by Jewel, it would be able to remain in the premises peacefully after June 30, 1978, "for a period of one year, and for certain six months"; and (3) the Firm would receive a fee of $50,000 for this accomplishment.

The affiant further alleged that based on the "guarantee" by the Firm, Foremost planned a "lost our lease" sale from July 1, 1978, through December 31, 1978; that Foremost believed that such a sale would permit it to sell off its inventory of merchandise, which always averaged approximately $200,000 and to peacefully arrange to sell its fixtures at a profit of approximately $235,000; that subsequent to the court order to vacate the premises no later than September 30, 1978, Foremost had a "very minimal" sale which commenced on September 2, 1978, and terminated on September 10, 1978; and that the doors of Foremost were closed permanently on September 11, 1978.

Finally, Robins averred that letters from his son, Gerald Robins, to Jewel/Osco were initially drafted by the Firm, then given to Gerald Robins to be (1) transcribed on Foremost's stationery, (2)

signed by Robins, and (3) mailed to Jewel; and that since May 16, 1977, every act taken by Foremost, every word spoken by Foremost, every legal document filed and written by Foremost was directed and supervised by the Firm.

Arguments on the Firm's motion for summary judgment were heard on November 18, 1982. First, the Firm argued that Foremost had knowledge of the lease's expiration at least two years prior to June 30, 1978; that facts disclosed that Foremost had been involved with Jewel in negotiations to extend the lease for three years prior to Foremost's retention of the Firm; and further that facts indicated that letters from Foremost to Jewel requested additional time on the lease that Jewel was unwilling to give.

As to the damages issue, the Firm asserted that Foremost's having to return their inventory at cost, when they could have garnered a profit of $160,000 had there been a "lost our lease" sale, was too speculative in nature.

As to the liability issue, the Firm argued that there was no contention on the part of Foremost that neither the injunction or forcible detainer actions against Jewel were mishandled, and that the antitrust action against Jewel which Foremost says was contrary to Illinois law was not the only avenue pursued against the forcible detainer action. The Firm further argued that Foremost asserted a guarantee which was not sufficiently set forth in Robins' affidavit, and that there was no allegation that the Firm told Foremost not to have a "lost our lease" sale prior to the June 30, 1978, expiration date. Finally, the Firm asserted that Foremost didn't have the liquidation sale until September 1978, approximately three months after the lease's actual expiration, when it then lasted only one week in duration.

Next, Foremost countered with the argument that Robins' entire affidavit stood without contradiction as the Firm had not filed a counteraffidavit. Foremost admitted to the court that the Firm had attempted to file an antitrust counterclaim to Jewel's forcible detainer action, but that it was denied leave to file the action. Foremost further argued that the Firm's "guarantee" led it to schedule a "lost our lease" sale after the June 30, 1978, expiration date, as Robins was a "layman" following the advice of his lawyers.

In response, the court initially noted that Robins' affidavit was probably insufficient, but viewed the alleged "guarantee," assuming one could be sufficiently set forth, as words in the nature of an attorney advising his client as to what the results of the litigation would be. After making the observation that Foremost was aware

that Jewel wanted the premises back as much as 13 to 14 months prior to the lease's expiration, the court stated that it found it difficult to imagine an injury to Foremost, even with the alleged "guarantee."

Finally, the trial court concluded that there was no real issue as to any material fact as well as no injury which had occurred, and entered an order granting summary judgment for the counterdefendant Firm on count I of the counterclaim, finding no just reason to deny enforcement or appeal. Count II of the counterclaim continues against the Firm. Counterplaintiff Foremost appeals from this order.

Opinion

■■ Foremost contends that the summary judgment was improperly granted. It argues that the Firm's "guarantee" that Foremost could be certain to remain peacefully in its leased premises "for maybe a year and for certain six months" after the expiration of its lease, in consideration of a legal fee of $50,000, was an act of negligence, as they contend that the Firm did not possess a legal basis for making such a guarantee.

The purpose of the summary judgment procedure is to determine whether any genuine issue of material fact exists and to summarily dispose of cases where none does exist so as to avoid congestion of trial calendars and the expense of unnecessary trials. (*Loveland v. City of Lewistown* (1980), 84 Ill. App. 3d 190, 405 N.E.2d 453.) The motion should be granted where the pleadings, exhibits, depositions and affidavits of record show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005.) However, the record may also include memoranda. *Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 360 N.E.2d 440.

■ In ruling on a motion for summary judgment, the trial court must construe pleadings, depositions and affidavits included therein most strictly against the movant and most liberally in favor of the nonmovant. (*Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 356 N.E.2d 639.) However, because summary judgment is a drastic remedy of disposing of litigation, it should be granted only when the right of the movant is clear and free from doubt. (*Hillblom v. Ivancsits* (1979), 76 Ill. App. 3d 306, 395 N.E.2d 119.) The defendant may at any time move for summary judgment in his favor for all or any part of relief sought against him. *Kusiciel v. LaSalle National Bank* (1982), 106 Ill. App. 3d 333, 435 N.E.2d

1217.

■ Foremost asserts a claim for legal malpractice in tort against the Firm in which it alleges that the Firm's "guarantee" to Foremost that it would be certain to remain in its leased premises "for maybe a year, and for certain six months," was gross and wantonly negligent advice. Foremost further contends that as a direct result of the Firm's failure to exercise a reasonable degree of skill and care, it incurred huge monetary losses.

To maintain an action for legal malpractice in Illinois, Foremost must prove four elements to establish a *prima facie* case: that an attorney-client relationship existed between Foremost and the Firm; that the Firm deviated from the standard of care owed to Foremost; that this alleged departure from the applicable standard of care owed to Foremost constituted the actual and proximate cause of Foremost's injury; and that as a result of this injury, Foremost suffered actual damages. See *Oda v. Highway Insurance Co.* (1963), 44 Ill. App. 2d 235, 194 N.E.2d 489; *Olson v. North* (1934), 276 Ill. App. 457.

■ It has been held in an action for negligence brought by the client against his attorney that there is no presumption that an attorney has been guilty of a want of care, arising merely from his failure to be successful in the undertaking. On the contrary, he is always entitled to the benefit of the rule that everyone is presumed to have discharged his duty, whether legal or moral, until the contrary is made to appear. *Dorf v. Relles* (7th Cir. 1966), 355 F.2d 488.

In a suit against an attorney for negligence, the burden is, therefore, on the plaintiff to allege and prove every fact essential to establish the defendant's duty and a violation of it. (*Priest v. Dodsworth* (1908), 235 Ill. 613, 617, 85 N.E. 940.) A lawyer does not guarantee that his judgment is infallible. (*Mecartney v. Wallace* (1919), 214 Ill. App. 618, 624.) An attorney is not liable for an error of judgment. *Morrison v. Burnett* (1894), 56 Ill. App. 129, 135.

■ ■ The law in Illinois is clear that an attorney is liable to his client for damages only when he fails to exercise a reasonable degree of care and skill, and the law distinguishes between negligence and mere errors of judgment. (*Stevens v. Walker & Dexter* (1870), 55 Ill. 151; *Brainerd v. Kates* (1979), 68 Ill. App. 3d 781, 386 N.E.2d 586; *House v. Maddox* (1977), 46 Ill. App. 3d 68, 360 N.E.2d 580.) The question of whether an attorney has exercised a reasonable degree of care and skill is one of fact, and in Illinois, the standard of care against which the attorney's conduct will be measured must generally be established through expert testimony. *Brainerd v.*

*Kates* (1979), 68 Ill. App. 3d 781, 386 N.E.2d 586; *Brown v. Gitlin* (1974), 19 Ill. App. 3d 1018, 313 N.E.2d 180.

In the case at bar, the trial court granted summary judgment finding that, even if words of guarantee were made, no genuine issue of material fact was present, as it viewed these words to be in the nature of an attorney telling his client what the results of the attorney's actions would be. Further, the trial court found no injury to Foremost due to the fact that Foremost had knowledge of Jewel's intention not to extend their lease more than one year prior to Foremost's retention of the Firm.

■■ It is our belief that the trial court erred in not considering what we perceive to be a major issue in this case—whether the advice of the Firm constituted a breach of the standard of care owed to Foremost by the Firm.

The issue as to whether this advice, given by the Firm in the form of a guarantee, represented the Firm's exercise of a reasonable degree of care and skill cannot be decided by the trial court as a matter of law.

Although we realize that a motion for summary judgment can be brought by the Firm at any time, we are compelled to conclude that the trial court erred in granting the Firm's motion for summary judgment in view of the entire record before us.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand for further proceedings consistent with the views expressed herein.

Reversed and remanded.

MEJDA, P.J., concurs.

JUSTICE SULLIVAN, specially concurring:

While I concur with the result reached in the opinion, it should be noted, for future reference, that no motion was made by defendant to test the sufficiency of plaintiff's complaint by motions to strike or dismiss, and this should have been done before the motion for summary judgment was considered. See *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 406, where the court stated:

> "When, and only when, a legally sufficient cause of action had been stated should the court have entertained the motions for summary judgment and considered the affidavits filed in support thereof."

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE LORENZ delivered the opinion of the court:

In its petition for rehearing, defendant Firm seeks clarification of our holding for the trial court on remand. The Firm contends that this opinion may be interpreted as authority for imposing liability upon attorneys for expressing their opinion as to the possible consequences of litigation. The Firm argues emphatically that "the results of litigated matters cannot be the subject of an attorney's guarantee and the attorney's failure to accomplish the desired result for his client does not constitute negligence."

As we noted in our original opinion, in order to maintain an action for legal malpractice in Illinois, four elements must be established: (1) that an attorney-client relationship existed giving rise to a duty owed to the plaintiff by the defendant; (2) that defendant breached this duty; (3) that defendant's breach constituted the actual and proximate cause of plaintiff's injury; and (4) that as a result of this injury, plaintiff suffered actual damages. See *Oda v. Highway Insurance Co.* (1963), 44 Ill. App. 2d 235, 251, 194 N.E.2d 489; *Olson v. North* (1934), 276 Ill. App. 457, 475-77.

The Firm contends that our opinion characterizes the Firm's conduct as the giving of advice, but that the allegations characterize the Firm's conduct as expressing their opinion as to the possible consequences of litigation. We see little value in debating the conclusiveness of alternative characterization, as we believe that our decision precisely indicates that this is a question of fact to be determined in the trial court, not a matter of law to be determined by summary judgment.

■ Further, we take no issue with the Firm's contention that an attorney is not liable for an error of judgment, as the law distinguishes between negligence and mere errors of judgment, the latter not constituting a basis for malpractice. See *Stevens v. Walker & Dexter* (1870), 55 Ill. 151; *Brainerd v. Kates* (1979), 68 Ill. App. 3d 781, 785, 386 N.E.2d 586; *House v. Maddox* (1977), 46 Ill. App. 3d 68, 71, 360 N.E.2d 580.

■ Although we agree with the Firm that an attorney is not liable as a guarantor of litigation, an attorney may be liable in negligence for the making of a guarantee, if it can be shown that it was in fact made and the making of the guarantee was a breach of the standard of care owed to the plaintiff by the Firm. If an attorney tells his client that he will accomplish a certain result, we believe that the attorney's duty to his client requires that he exercise that

degree of skill and care used in the community to reach such a conclusion. This degree of skill and care is a question of fact to be measured through expert testimony, and usually cannot be determined by the trial court as a matter of law. See *Brainerd v. Kates* (1979), 68 Ill. App. 3d 781, 386 N.E.2d 586; *Brown v. Gitlin* (1974), 19 Ill. App. 3d 1018, 313 N.E.2d 180; *Olson v. North* (1934), 276 Ill. App. 457, 476.

Here, the trial court granted summary judgment finding that, even if words of guarantee were made, no genuine issue of material fact was present, as it viewed these words to be in the nature of an attorney telling his client what the results of the attorney's actions would be.

While we express no opinion whatsoever concerning whether the Firm breached a duty owed to plaintiff, or whether such breach proximately injured plaintiffs, we find that the trial court erred in granting summary judgment where questions of fact, which *could* amount to a cause of action in negligence, remain unresolved.

Remaining questions of fact include:

1. Whether the Firm gave a guarantee of the outcome of litigation;

2. Whether a similarly situated attorney in the exercise of reasonable skill and care would have given such a guarantee;

3. Whether plaintiff was injured as a proximate consequence of the giving of such a guarantee.

Finally, the Firm uses the example of a defense attorney advising a client that a case has a verdict potential of $100,000-$150,000. The Firm contends that under our decision, if the verdict exceeded $150,000, defense counsel would be subject to a possible lawsuit. We find no merit with this application of our decision, as we have clearly stated that the fact that the attorney misjudged the result does not give rise to a cause of action. It is only if the attorney breached the applicable standard of care, and the breach proximately injured plaintiff, that the attorney would be liable. We believe that attorneys owe no less to their clients.

For the foregoing reasons defendant's petition for reconsideration or rehearing is denied.

MEJDA, P.J., and SULLIVAN, J., concur.