Paul A. SCHMIDT, Pauline B. Schmidt, Paul G. Schmidt and
Acro Corporation *v.* PEARSON, EVANS, and CHADWICK, a
Partnership; C. Thomas Pearson, Jr.; Marshall Dale Evans;
Charles R. Chadwick; Stephen R. Bigger; Steven Tennant, P.A.;
and Steven Tennant

95-519                                                    931 S.W.2d 774

Supreme Court of Arkansas
Opinion delivered November 4, 1996

*Henry McDermott*, for appellants.

*Davis, Cox & Wright*, by: *Constance G. Clark, Walter B. Cox*, and *Don A. Taylor*, for appellees Pearson, Evans, and Chadwick, a Partnership, C. Thomas Pearson, Jr., Marshall Dale Evans, and Charles R. Chadwick.

*Warner, Smith, & Harris PLC*, by: *G. Alan Wooten* and *Kathryn Stocks Campbell*, for appellees Stephen R. Bigger, Steven Tennant, P.A., and Steven Tennant.

TOM GLAZE, Justice. The appellants, Paul A., Pauline B., and Paul G. Schmidt, bring this legal malpractice suit against attorneys C. Thomas Pearson, Jr., and Steven Tennant for their alleged negligence committed in *Schmidt* v. *McIlroy Bank & Trust*, 306 Ark. 28, 811 S.W.2d 281 (1991).[1] *Schmidt* involved the Schmidts' lender-liability action against McIlroy Bank & Trust. This court affirmed an award of summary judgment dismissing the Schmidts' suit against McIlroy Bank because they failed to make a timely amendment to their complaint alleging their status or standing as guarantors of their corporation's (Acro's) debts. In other words, the Schmidts had not pled any individual cause of action under their separate guaranty contract against the Bank. Presented with a case of first impression in *Schmidt*, this court held that filing a motion to amend the pleadings was unnecessary under Ark. R. Civ. P. 15(a), and that until the pleadings were amended and a request was made to strike a pleading, the trial court was not required to determine whether prejudice or undue delay would result from the amendment. Because the Schmidts had had ample time to amend their

---

[1] Additional background is found in *McIlroy Bank & Trust* v. *Acro Corp.*, 30 Ark. App. 189, 785 S.W.2d 47 (1990).

pleadings to allege their guarantor status, but had failed to do so, we upheld the trial court's granting of McIlroy Bank's second request for summary judgment, which dismissed the Schmidts' action.

We believe a recitation of the facts leading up to the present legal malpractice action might be helpful. The Schmidts were the sole shareholders of Acro Corporation,[2] a family farming and egg-producing business. The Schmidts had had a business relationship with McIlroy Bank & Trust since 1976. At the time the lender-liability cause of action arose, McIlroy Bank held Acro's secured notes, mortgage, and checking accounts. The notes and the mortgage were secured by the personal guarantees of the Schmidts. In 1986, the Bank's employees were replaced by employees of Banc-shares, which was in the process of purchasing the Bank. The evidence showed the Bank agreed to extend payments under the secured notes and to allow the Schmidts to temporarily overdraw on Acro's checking accounts. However, after Acro overdrew its checking accounts, the Bank closed the accounts, filed a foreclosure suit in chancery court, and made demand for payment under the secured notes. The Schmidts filed for Chapter 11 bankruptcies, but voluntarily dismissed them later.

The Schmidts, through their original attorney, Larry Froelich, then filed their lender-liability complaint in circuit court against the Bank, seeking $15 million in compensatory and $1 million in punitive damages for Acro and themselves as shareholders. However, as previously noted in our discussion of *Schmidt*, the Schmidts failed to request relief as guarantors. While those actions in circuit and chancery court were pending, the Schmidts employed attorney, C. Thomas Pearson, Jr., to pursue their lender-liability suit and to defend the Bank's foreclosure action. With the Schmidts' approval, Pearson engaged the assistance of Steven Tennant as co-counsel.

In 1988, the appellants' original counsel, Larry Froelich, withdrew, leaving Pearson and Tennant as attorneys of record in the lender-liability suit and Tennant as attorney of record in the foreclosure case. *See McIlroy Bank & Trust v. Acro Corp.*, 30 Ark. App. 189, 785 S.W.2d 47 (1990) (where judgment for the Bank was

---

[2] While Acro is listed in the style of this case as a plaintiff and an appellant, Acro was determined to be a nonexisting corporation in *Schmidt v. McIlroy Bank & Trust*, 306 Ark. 28, 811 S.W.2d 281 (1991). At trial, Paul G. Schmidt testified Acro did not exist after 1986.

reversed and remanded, because the chancellor signed the foreclosure consent decree in error). On retrial of the foreclosure action, the Bank was awarded $634,279.20 plus 10% attorney's fee. The Schmidts' property was sold at foreclosure for $30,000, leaving an outstanding judgment against them.

On August 3, 1990, the Schmidts filed a complaint against their attorneys for breach of contract and for legal malpractice in both the lender-liability and foreclosure actions. Specifically, the Schmidts alleged, among other things, that Pearson and Tennant willfully and negligently allowed Acro's corporate charter to be revoked, failed to properly dissolve Acro and preserve its cause of action against the Bank, and failed to properly amend the lender-liability complaint to include the Schmidts as guarantors. The Schmidts sought in excess of $7 million in damages and refund of all amounts paid to Pearson and Tennant. A jury trial was held on August 9-11, and September 15-16, 1994, and by interrogatories the ten-member jury found both Pearson and Tennant negligent. On September 26, the trial court entered judgment against Pearson and Tennant for damages of $880,609.74 in favor of the Schmidts and $3.1 million in favor of Acro. On that same date, Pearson and Tennant filed a motion for judgment notwithstanding the verdict, and in the alternative, for new trial and stay of judgment.

On October 25, the trial court entered its order granting Pearson and Tennant their motion for JNOV finding there was insubstantial evidence to support the verdict. The trial court also conditionally granted them a new trial because of other irregularities in the proceedings. On appeal from that order, the Schmidts argue the trial court abused its discretion in granting Pearson's and Tennant's motions for JNOV and new trial, and they also argue the trial court abused its discretion in finding it had erred by (1) failing to strike two veniremen; (2) failing to exclude hearsay evidence; and (3) allowing introduction of testimony regarding Pearson's and Tennant's expenditure of monies advanced for litigation costs. Because we find the Schmidts failed to show Pearson and Tennant negligently and proximately caused the Schmidts' damages, we affirm.

In reviewing this matter on appeal, we are guided by the rule that a trial court may enter judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict of the jury and the moving party is entitled to judgment as a matter

of law. *McLaughlin* v. *Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996). Furthermore, a trial court may not substitute its view for that of the jury, and the jury's verdict must be clearly against the preponderance of the evidence in order to be set aside. The standard regarding a motion for a new trial is the same. *See* Ark. R. Civ. P. 50(b). Also, on appeal, this court views the evidence and all reasonable inferences therefrom in the light most favorable to the party for whom the original judgment was entered. *McLaughlin*, 324 Ark. at 368.

We next turn to those principles that control in legal malpractice actions, and we are met by the rule that an attorney is negligent if he or she fails to exercise reasonable diligence and skill on behalf of the client. *Anthony* v. *Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996). And, in order to prevail under a claim of legal malpractice, a plaintiff must prove that the attorney's conduct fell below the generally accepted standard of practice and that this conduct proximately cause the plaintiff damages. To show damages and proximate cause, the plaintiff must show that but for the alleged negligence of the attorney, the result in the underlying action would have been different. *Id.; see also Tyson Foods, Inc.* v. *Adams*, 326 Ark. 300, 930 S.W.2d 374 (1996); *Callahan* v. *Clark*, 321 Ark. 376, 901 S.W.2d 842 (1995); *Shaffer* v. *Wilkes*, 65 F.3d 115 (8th Cir. 1995); *Vanderford* v. *Penix*, 39 F.3d 209 (8th Cir. 1994).

In deciding this case, we can assume the Schmidts presented sufficient proof to have prevailed in their underlying lender-liability action against McIlroy Bank. Even so, we conclude their evidence falls short in showing Pearson's and Tennant's actions negligently and proximately caused the Schmidts' damages. The Schmidts point to five instances where Pearson and Tennant negligently performed, causing the Schmidts to sustain damages. We consider each instance in the order the Schmidts discussed them in their brief.

The Schmidts first complain of Pearson's and Tennant's use of a $11,000 nonrefundable retainer for payment to themselves, other attorneys, and secretaries, rather than for discovery and copying costs. The Schmidts contend that they entered an oral, contingency contract with Pearson and Tennant, and agreed to provide them with an initial $10,000 retainer for discovery, deposition, and copying costs; apparently, an additional $1000 was paid later. The Schmidts argue Pearson and Tennant were negligent in the use of this retainer.

■■ Whether Pearson and Tennant spent the retainer as the parties agreed is an issue dealing with breach of contract, and not one of negligence. *See Robertson* v. *White*, 633 F.Supp. 954 (W.D.Ark. 1986) (the failure to perform a promise implied in a professional relationship sounds in contract, rather than tort). On this point, we note that Paul G. Schmidt testified and conceded the $10,000 paid Pearson and Tennant was nonrefundable and, as a consequence, the evidence reflects there was no duty to return any portion of the retainer to the Schmidts. And while the Schmidts offered some testimony that the retainer should have been spent for depositions, they failed to show what depositions should have been taken or what depositions may have made a difference in proving their case. In addition, from the record as abstracted, the jury was not given an interrogatory on the Schmidts' breach-of-contract claim, nor did the jury return a finding that a breach of the retainer contract occurred. When the issues are submitted to the jury on interrogatories, failure to request a finding on one issue is a waiver of that issue on appeal, and this court cannot say what the jury would have found. *Olmstead* v. *Moody*, 311 Ark. 163, 842 S.W.2d 26 (1992). Further, even if the retainer was negligently used, the Schmidts fail to show that the misapplied expenditures proximately caused the loss of their lender-liability suit.

■ The Schmidts also complain that even though they paid this retainer on January 5, 1988, Pearson and Tennant did not enter their appearance until three months later in April. We note that the Schmidts made no argument on this issue, and this court will not consider assignments of error that are unsupported by convincing argument or authority. *Fayetteville Sch. Dist.* v. *Ark. State Bd. of Education*, 313 Ark. 1, 852 S.W.2d 122 (1993).

Second, the Schmidts contend Pearson and Tennant ignored the Bank's settlement offer of $500,000 in the foreclosure action, and did no evaluation or investigation of their lender-liability case until after the offer was withdrawn on November 21, 1988. The Schmidts point to Tennant's testimony that he waited so he could use the Bank's evidence presented in the foreclosure hearing to get a "free shot" at what the Bank's testimony would be in the lender-liability case. Tennant testified after he heard the Bank's evidence, he "decided we had a hard, hard row to hoe." The Schmidts contend Pearson and Tennant were negligent in not deposing the Bank's employees while the foreclosure settlement offer was still

viable. In response, Pearson maintains the settlement offer was discussed between the parties, and ultimately rejected.

The Schmidts presented no evidence showing the Bank's settlement offer in the foreclosure action should have been accepted, nor if it had been accepted that its acceptance would have caused them to prevail in the lender–liability action. In fact, the Schmidts' expert testified he had no opinion regarding whether the Bank's settlement offer should have been accepted. Instead, the Schmidts merely assert the deficiency judgment against them would have been less had the settlement offer been accepted.

An attorney is not a guarantor that his judgment is infallible and is not liable for an error of judgment made in good faith. *Spivack, Shulman & Goldman* v. *Foremost Liquor Store, Inc.*, 124 Ill. App.3d 676, 465 N.E. 500 (Ill. App. 1 Dist. 1984). Finally, from the record as abstracted, the jury was not asked to return a finding as to whether Pearson and Tennant were negligent in the foreclosure action. Without more, the Schmidts cannot claim on appeal that the attorneys' acts in one cause of action were the proximate cause of their loss in a different cause of action.

Third, the Schmidts maintain Pearson was negligent in not dissolving Acro pursuant to Ark. Code Ann. §§ 4-26-1101 -1109 (Repl. 1991), thereby preserving Acro's only asset of any value, namely, its lender–liability action against the Bank. For support, the Schmidts point to the statements of their legal expert, Richard Downing, who testified that a reasonable attorney would have paid Acro's back franchise taxes and filed a certificate of dissolution, thus allowing Acro to wind down its affairs and pursue its suit against the Bank in its corporate name. Then, Downing testified, the reasonable attorney would have amended the complaint to include the Schmidts as guarantors.

But Pearson contends dissolving Acro would have resulted in the very thing the Schmidts did not want, that is the appointment of a receiver, thereby depriving the Schmidts of their assets. Pearson cites Downing's testimony acknowledging that dissolution would have allowed Acro's creditors to force the Schmidts into a receivership. Additionally, Pearson points out the Schmidts voluntarily withdrew from Chapter 11 bankruptcy because of the threat of receivership, and Paul G. Schmidt testified that a receivership was not an option. Finally, Pearson contends the issue of whether to

dissolve Acro was a question of professional judgment made after discussing the issue with his clients, and after considering the consequences and whether such action would serve the best interest of his clients.

■ An attorney is not liable to a client when acting in good faith, he makes mere errors of judgment. *Cianbro Corporation* v. *Jeffcoat & Martin*, 804 F.Supp. 784 (D.S.C. 1992); *Martinson Manufacturing Co., Inc.* v. *Seery*, 351 N.W.2d 772 (Iowa 1984); *Spivack, Shulman & Goldman*, 124 Ill. App.3d 676, 465 N.E.2d 500 (1 Dist. 1984); *George* v. *Caton*, 93 N.M. 370, 600 P.2d 822 (1979); *Herston* v. *Whitesell*, 348 So.2d 1054 (Ala. 1977); *Talbot* v. *Schroeder*, 13 Ariz. App. 230, 475 P.2d 520 (1970); *Meagher* v. *Kavli*, 97 N.W.2d 370 (Minn. 1959). In the present case, the evidence showed Pearson used his best judgment in not dissolving Acro, which might then be forced into receivership and liquidation. *See* § 4-26-1103(2) and (3).

Fourth, the Schmidts contend Pearson and Tennant should have amended the lender–liability complaint to include the Schmidts as guarantors of Acro's debts. The Schmidts note the Bank apprised Pearson and Tennant of this deficiency in the Bank's second motion for summary judgment, yet Pearson and Tennant failed to respond properly. *See Schmidt* v. *McIlroy Bank & Trust*, 306 Ark. 28, 811 S.W.2d 281 (1991). The Schmidts point to the testimony of their legal expert who testified Pearson and Tennant were negligent in waiting until the hearing on the summary judgment motion to request an amendment to the complaint. Pearson and Tennant countered with testimony from their own legal expert.

■■ As a matter of law, attorneys are not liable for mistaken opinion on a point of law that has not been settled by a court of highest jurisdiction, and on which reasonable attorneys may differ. *Cianbro Corp.* v. *Jeffcoat & Martin*, 804 F.Supp. 784 (D.S.C. 1992); *Martinson Manufacturing Co., Inc.* v. *Seery*, 351 N.W.2d 772 (Iowa 1984); *Brown* v. *Gitlin*, 19 Ill. App.3d 1018, 313 N.E.2d 180 (1974); *Martin* v. *Burns*, 102 Ariz. 341, 429 P.2d 660 (1967); *Meagher* v. *Kavli*, 97 N.W. 370 (Minn. 1959). As Pearson and Tennant point out, the disagreement between their legal expert and the Schmidts' was sufficient evidence that, as a matter of law, Pearson and Tennant were not negligent in failing to amend the Schmidts' complaint before the summary-judgment hearing. Further, they note this court's split decision in *Schmidt* reflects that the issue was unsettled and reasonably subject to differing opinions among the

experts. Accordingly, we conclude that the trial court here was within its authority to determine, as a matter of law, that Pearson and Tennant were not negligent in failing to amend the complaint before the summary-judgment hearing since whether Pearson and Tennant should have filed an amendment in these circumstances involved an unsettled legal issue over which experts could reasonably disagree.

Finally, the Schmidts contend it was negligent of Pearson and Tennant to request $1000 to appeal the foreclosure action when they had $4000 of the Schmidts' money remaining in the attorneys' trust accounts. Further, the Schmidts contend Pearson and Tennant were negligent in failing to appeal the foreclosure decree or, alternatively, return the $1000 to them. But as Pearson and Tennant point out, the issue of the $1000 is a contract issue and not one sounding in tort. Pearson also notes even if they had appealed the foreclosure decree, no evidence was presented at trial that the Schmidts would have prevailed and obtained reversal of the decree. Ultimately, the issue of the $1000 and appeal of the foreclosure decree is not a proximate cause of the Schmidts' failure to prevail in their lender-liability action.

We hold the trial court was correct in finding no substantial evidence to support the verdict against Pearson and Tennant for legal malpractice. None of the issues presented by the Schmidts was the proximate cause of the loss of their lender-liability claim against the Bank. Therefore, attorneys Pearson and Tennant were entitled to judgment notwithstanding the verdict as a matter of law. Because of our holding, it is unnecessary to discuss the trial court's alternative grant of a new trial based on questions of procedural irregularities. We affirm.

JESSON, C.J., DUDLEY and NEWBERN, JJ., not participating. Special Chief Justice CAROLYN B. WITHERSPOON joins this opinion. Special Justices HANI W. HASHEM and JOHN HARRIS JONES concur.

HANI W. HASHEM, Special Justice, concurring. I concur with the result reached by the majority. However, I write this separate opinion to bring attention to an earlier error of this court. Here, the most troubling allegation made by appellants relates to their prior lender-liability claim. *See Schmidt* v. *McIlroy Bank & Trust*, 306 Ark. 28, 811 S.W.2d 281 (1991). Appellants contend that the appellees, acting as their attorneys, failed to amend their complaint in the

lender-liability case to allege a separate cause of action on behalf of the Schmidts as guarantors of the notes of Acro Corporation.

In *Schmidt* v. *McIlroy Bank,* the appellees herein represented appellants in a lender-liability action against McIlroy Bank. In their complaint appellees alleged damages on behalf of Acro Corporation and damages for the Schmidts as stockholders, but did not ask relief for the Schmidts as guarantors of the notes owed by Acro Corporation. The trial court granted summary judgment against Acro Corporation on the ground that its charter had been revoked for failure to pay franchise taxes. McIlroy Bank filed a subsequent motion for summary judgment against the Schmidts individually. In their response to the second motion for summary judgment the appellee attorneys stated, "The plaintiffs should be allowed to amend their complaint to permit the real parties to prosecute the action." At the hearing on the second motion for summary judgment, the appellee attorneys sought to amend their complaint. "We ask the court to allow the plaintiffs to amend the complaint for the sole purpose to include the individuals as guarantors and state a cause of action that would not leave any question . . ." The trial court recognized the appellee attorneys' request to amend the complaint, however, the trial court stated that it would deny the oral motion to amend the complaint as being untimely. The trial court then granted summary judgment against the Schmidts. This court affirmed the decision of the trial court in *Schmidt* v. *McIlroy Bank & Trust,* 306 Ark. 28, 811 S.W.2d 281 (1991).

In the current appeal, the appellants contend that their attorneys were negligent in the lender-liability action in requesting permission to amend their complaint to state a separate cause of action for the Schmidts as guarantors, as opposed to simply going forward and filing an amended complaint. ARCP 15(a) allows a party to amend its pleadings at any time without permission of the court. The corresponding federal rule requires leave of the court before an amended complaint can be filed under similar circumstances. *See* FRCP 15. The point that is most troubling to me, irrespective of this technical distinction, is that the trial court, in ruling on the motion for summary judgment, recognized that the appellee attorneys had requested permission to amend their complaint, yet denied the oral motion to do so. The supreme court affirmed, holding that the oral motion to amend the complaint was unnecessary and the trial court ruling was invited error. *See Schmidt* v. *McIlroy Bank &*

*Trust.* The dissent by Justice Brown in *Schmidt* v. *McIlroy Bank & Trust* states with greater eloquence than I am able to muster the problems attendant in following this strict interpretation of ARCP 15 regarding amendment of pleadings. The decision in *Schmidt* v. *McIlroy Bank & Trust* is bad law. This court should take its earliest opportunity to reverse that decision, and adopt the position of Justice Brown's dissent in that case.

In spite of the fact that the appellee attorneys could have simply filed an amended complaint in the lender–liability action, without asking permission of the court, I do not find this sufficient basis to support a finding of legal malpractice. *Schmidt* v. *McIlroy Bank & Trust* was a case of first impression, with two justices of the supreme court, including the chief justice, dissenting. As stated earlier in the majority opinion, an attorney is not liable for a mistaken opinion on a point of law that has not been settled by the court of highest jurisdiction, and on which reasonable attorneys may differ. Here, not only was the issue regarding a request to amend the complaint under ARCP 15 not a settled issue in this jurisdiction, even the supreme court justices, the ultimate legal experts in this jurisdiction, were unable to agree upon the final resolution of this issue. If two supreme court justices disagree as to the outcome of a particular issue, it seems implausible to hold a practicing attorney to a higher standard.

JOHN HARRIS JONES, Special Justice, concurring. Jury verdicts in favor of appellants for approximately $4.86 million were set aside by the trial judge and judgment notwithstanding the verdicts rendered in favor of appellees, dismissing the appellants' claims for malpractice for lack of substantial evidence.

The claims against appellee attorneys Pearson and Tennant arose out of a lender–liability action on behalf of appellants against McIlroy Bank & Trust. In February 1986, McIlroy, under new ownership, terminated its lending relationship with appellants which had extended over the preceding ten years and in March 1986 sued to foreclose on its collateral.

Appellants filed for Chapter 11 bankruptcy and in August 1986 filed a lender–liability suit against McIlroy in the bankruptcy court. The following month appellants dismissed without prejudice their lender–liability claim. Appellants withdrew from bankruptcy in September 1988.

■ There must be a rational basis in the evidence to warrant the giving of an instruction. *Brown* v. *State*, 325 Ark. 504, 929 S.W.2d 146 (1996). Here, none of the State's case-in-chief is summarized in the abstract. The trial court ruled on the proffered instructions after the State rested its case. The discussions and objections concerning instructions are not abstracted. We are informed only that appellant submitted three proposed instructions on lesser-included offenses and that the trial court ruled that it would instruct on burglary, but not any lesser-included offenses. An abstract must include all material "necessary to an understanding of all questions presented to the Court for decision." Ark. R. Sup. Ct. 4-2(a)(6). We have said that the argument made to the trial court and the trial court's ruling are "vital" to a review of the ruling by this court. *Watson* v. *State*, 313 Ark. 304, 854 S.W.2d 332 (1993). Here, the abstract gives us only the three proffered instructions, part of appellant's testimony, and the result of the instruction conference. We do not have sufficient material to fully understand the issue. Appellant quoted part of his argument to the trial court and the trial court's comments in the argument section of his brief, but we have stated that scattering transcript references throughout the argument is not a substitute for a proper abstract. *Moncrief* v. *State*, 325 Ark. 173, 925 S.W.2d 776 (1996); *Watson* v. *State*, 313 Ark. 304, 854 S.W.2d 332 (1993).

The court of appeals' opinions in this case confirm that appellant's abstract is not sufficient to give an understanding of the trial below and the issues presented on appeal. The majority opinion held that appellant's abstract was sufficient, but the majority opinion contains five statements of fact that are not found in the abstract. The dissenting opinion quotes directly from the transcript of the instruction conference to show that only the State's evidence had been introduced when the trial court considered the instructions. The trial judge stated, "I'm just going to instruct *at this time* on residential burglary." The abstract did not reflect this and appellant does not discuss it. Yet, one of the primary issues would be whether appellant waived the issue by not renewing it, or whether the court had a duty to change its ruling on its own motion, an issue we cannot reach because none of this is reflected in the abstract.

Affirmed.