ROUSE *v.* TEETER.

4-8660                                        216 S. W. 2d 869

Opinion delivered January 17, 1949.

Substituted for opinion delivered December 13, 1948.

Rehearing denied February 14, 1949.

*R. D. Rouse* and *Johnson & Johnson,* for·appellant.

*Tompkins, McKenzie & McRae,* for appellee.

SMITH, J. This appeal involves the title to two parcels of land, one described as the NW½ of lot 4, and the other as the NE 50 feet of the NW½ of lot 3, block 71, Brad Scott's Addition to the City of Prescott. No question is made as to these unusual descriptions, and there appears to be no uncertainty or disagreement among the parties to this litigation as to the lots in· question.

The suit was brought by appellant to quiet her title to the lots above described, and to cancel certain deeds under which appellee claims title. The parties deraign their respective titles as follows. Will M. Waller acquired title to all lots 3 and 4, by deed from W. T. Hart

in 1905, and for many years and until his death in 1940, resided in the house located on the SE½ of lot 4, which house was not on either of the parcels of land above described.

On Oct. 3, 1927, Will M. Waller, and Bess, his wife, executed a deed of trust to the SE½ of lots 3 and 4 to the First State Bank, to secure an indebtedness of $2,500. These lands are not involved in the present suit, but adjoin those which are.

On July 2, 1928, Will M. Waller and wife executed a deed of trust to appellant, Marion W. Rouse, who was his sister, upon the lands involved in this suit and other lands, to secure a debt of $200 due November 15, 1928. This instrument bears a marginal endorsement upon the record, releasing a part of the lands which are not involved in this suit from the lien of this deed of trust.

On May 1, 1931, Will M. Waller and wife executed another deed of trust upon the lands here involved to appellant, Marion W. Rouse, to secure an indebtedness of $1,625, due May 1, 1932, bearing interest at the rate of 8%.

The entire E½, block 71 was assessed *en masse* for the general taxes of 1928, and the taxes not having been paid, it was sold and later certified to the state.

On June 21, 1932, the State Land Commissioner conveyed the E½ block 71 to the First State Bank, and on June 27, 1932, the bank executed a quitclaim deed to the parcels involved in this suit, to appellant, which deed was not filed for record until May 24, 1943.

Will M. Waller, W. B. Waller, Jr., and appellant are the children and sole heirs at law of their mother, Mollie R. Waller, now deceased. Mollie R Waller guaranteed the payment of Will M. Waller's debt to appellant. The debt was not paid, and the claim was duly probated against Mollie R. Waller's estate. The probated demand was paid in installments, the final payment being made March 3, 1936, and the debt was marked paid in full by marginal endorsement on September 19; 1940.

On March 8, 1938, a decree was entered by the Nevada Chancery Court, in which county the lands are situated, condemning the NW½ of lot 4, block 71, for sale for past due assessments of benefits in Street Improvement District No. 5, of the City of Prescott, for the years 1935 and 1936 and 1937. The other lot was not in the improvement district.

The Clerk of the Chancery Court had not complied with the provisions of § 7319, Pope's Digest, which require the clerk to record the list of lands on which delinquent assessments are due improvement districts. A foreclosure decree was entered pursuant to which the lot was sold to the Improvement District, which sale was reported to and approved by the court on Dec. 29, 1938, and on Oct. 30, 1945, the improvement district sold and conveyed the lot to appellee.

On November 25, 1938, the bank filed suit against Will M. Waller to foreclose its lien on the SE½, lots 3 and 4, and on March 10, 1939, Will M. Waller and wife conveyed SE½, lots 3 and 4 to the bank for the consideration recited in the deed of trust. By deed dated May 4, 1943, the bank conveyed SE¼. lots 3 and 4 to appellee. Neither of these lots is involved in the present suit.

On September 7, 1938, Will M. Waller and wife conveyed the NW½ of lot 4 to Will Ed. Waller, who on October 29, 1945, executed a deed to appellee to both of the lots involved in this case, that is, the NW½ of lot 4 and the NE 50 feet of the NW½ of lot 3.

Appellant paid the improvement taxes on the NW½ of lot 4 for the years 1932, 1933 and 1934 and she also paid the general taxes on both lots from 1932 continuously to and including the year 1942, and the years 1944 and 1945. The 1943 taxes were paid by Bess Waller, the widow of Will M. Waller.

Upon this record appellant's suit, which was one to quiet her title, was dismissed as being without equity, from which decree is this appeal.

Inasmuch as this is a suit by appellant to quiet her title to the two lots herein several times described, we are not concerned with the validity of appellee's title except in so far as it affects the validity of appellant's title. This for the reason that if appellant is accorded the relief prayed, it must be upon the strength and validity of her own title and not upon the invalidity of appellee's title, although apellee pleads laches and limitations in bar of appellant's suit.

Appellant insists that if her title is otherwise good and valid, it is unaffected by the sale in the foreclosure suit of the improvement district, foreclosing its lien for the unpaid taxes due it. Inasmuch as the sale under the decree and the confirmation thereof was had more than five years before the institution of this suit, the suit would appear to be barred by § 8924, Pope's Digest, which provides that all actions against the purchaser for the recovery of lands sold at judicial sales shall be brought within five years after the date of such sale and not thereafter, with certain exceptions not relevant here. The holding in the case of *Cutsinger* v. *Strang,* 203 Ark. 699, 158 S. W. 2d 669, would bar this suit, unless it appeared, as was said in that case, that it affirmatively appears from the record that facts essential to the jurisdiction of the court did not exist. Appellant insists that this lack of jurisdiction does affirmatively appear, for the reason that there had been no compliance with § 7319, Pope's Digest, *supra.*

It was pointed out in the case of *Douglas* v. *Ferris,* 197 Ark. 32, 122 S. W. 2d 558, that § 8924, Pope's Digest, does not apply to a void sale by an improvement district. *Dupree* v. *Williams,* 172 Ark. 979, 291 S. W. 84. But was the sale void for the failure to comply with § 7319, Pope's Digest? The case of *Douglas* v. *Ferris, supra,* apparently gives some support to that contention, but the support is more apparent than real. The sale in that case was for unpaid betterment assessments to the St. Francis Levee District, and was had, as the opinion points out, under the provisions of special acts relating to the levee district which provided that the filing of the de-

linquent list of lands was mandatory and essential to confer jurisdiction to order the sale of the delinquent lands, and it was there held that a sale without compliance with the requirement that the list of delinquent lands be filed, was void, and might be collaterally attacked. It was held in this case of *Douglas* v. *Ferris, supra,* that the requirement that the delinquent list be filed and recorded was jurisdictional because the special acts under which the levee district had proceeded so expressly provided. But the court distinguished these special acts from Act 534 of the Acts of 1921 which required the county collector to file with the chancery clerk a duly verified copy of the delinquent list, and that the clerk file and record said list, and also require the clerk to attach his certificate to the recorded list.

It was there said: "It is true that we have held that a failure to file such a delinquent list or to record and certify it within the time limit is not jurisdictional, and that improvement districts may proceed with foreclosure proceedings, notwithstanding such failure to file and record the delinquent list. *Moore* v. *Long Prairie Levee District,* 153 Ark. 85, 239 S. W. 380; *Beasley* v. *Hornor,* 173 Ark. 295, 292 S. W. 130; *Miller* v. *Coleman, et al.,* 192 Ark. 932, 96 S. W. 2d 449."

Section 7319, Pope's Digest, appears as § 7 of Act 207 of the Acts of 1937, p. 762, and is not essentially different from Act 534 of the Acts of 1921 compliance with which was held not to be essential to confer jurisdiction to foreclose an improvement district's lien for delinquent taxes in the cases last above cited.

Unlike the legislation construed in the case of *Douglas* v. *Ferris, supra,* the filing and recording of the delinquent liens was not made jurisdictional either by Act 534 of 1921, or by Act 207 of the Acts of 1937, and we therefore hold that compliance with § 7319, Pope's Digest, was not essential to confer jurisdiction to enforce the lien of the improvement district.

This discussion is applicable only to NW½ of lot 4, as the other lot is not in the improvement district, and

was not sold for taxes under the foreclosure decree. But as to this NW½ of lot 4, it has already been recited that this lot was sold to the improvement district by the commissioner named in the foreclosure decree, and on October 30, 1945, the district conveyed this NW½ of lot 4 to appellee for the consideration of $500.

But appellant says this deed did not convey the title for reasons now to be discussed. Appellant says she acquired title to the NW½ of lot 4 and the other lot also, by reason of the fact that she paid the general taxes due thereon for eleven consecutive years, from 1932 to 1942. But this is not true for several reasons. In the first place it is not certain that the lots were not adversely occupied during all the time these payments were being made. While these two parcels may not have been actually occupied, they were parts of lots which were occupied. It appears to be undisputed that until the time of his death in 1940, Will M. Waller resided in a house located on the SE½ of lot 4.

However, we think the deeds to the entire E½, block 71 to the bank and from the bank to appellant, did not constitute and were not, in fact, deeds of conveyance, but were mere redemptions from the sale for 1928 taxes on which the land commissioner's deed to the bank was based. At the time the bank got its deed from the land commissioner it held a mortgage on the land conveyed in that deed, and six days after receiving this deed the bank conveyed to appellant for the recited consideration of one dollar. But appellant also had a mortgage on these lots, and these deeds were mere redemptions.

It was said in the case of *Cole* v. *Swift*, 190 Ark. 499, 79 S. W. 2d 426, that in a long line of decisions we have consistently held that the purchase by a mortgagee of the mortgagor's right of redemption at a tax sale did not extinguish the mortgagor's right of redemption, but that on the contrary such purchase should be treated and considered as a redemption from the tax sale for the benefit of all interested parties. And in *Ross* v. *Frick Co.*, 73 Ark. 45, 83 S. W. 343, it was said that while a mortgagee may pay the taxes on the mortgaged land

and claim re-imbursement therefor, he may not permit the land to be sold for taxes and acquire title under the sale. See, also, *Bartel* v. *Ingram,* 178 Ark. 699, 11 S. W. 2d 488; *Zimmerman* v. *Bank,* 194 Ark. 554, 108 S. W. 2d 1074; *Adams* v. *Sims,* 177 Ark. 652, 9 S. W. 2d 329.

The quit claim deed which appellant obtained in 1932 and did not record until 1943, conferred no color of title as it was a mere redemption. The case of *Galloway* v. *Battaglia,* 133 Ark. 441, 202 S. W. 836 and *Inman* v. *Quirey,* 128 Ark. 605, 194 S. W. 858, are to the effect that a tax purchase which was treated as a redemption did not operate as color of title under which title could be acquired.

Was appellant a mortgagee when she acquired the tax title based upon the sale for the non-payment of the 1928 taxes? It is undisputed that she was. She held a mortgage on the lots in question, the payment of which had been guaranteed by Mrs. Mollie R. Waller, and she probated this guaranty as a demand against Mrs. Waller's estate, and the final balance due thereon was paid March 31, 1936. And while the record is silent, we think it may be assumed that when she collected the balance due on the mortgage given her by Will M. Waller, she included the taxes she had paid to protect her security, and without including payments prior to 1936, appellant did not pay taxes for seven consecutive years. Evidently she was not claiming title to land upon which she was collecting the balance due under a deed of trust on the land. Moreover the NW½ of lot 4 was not subject to the general taxes after 1937, for the reason that the title was in the improvement district, where it remained from the date of the sale and deed by the commissioner appointed in the foreclosure decree, until October 23, 1945, when the improvement district conveyed the lots to appellee. See *Hubble* v. *Grimes,* 211 Ark. 49, 199 S. W. 2d 313, and the cases there cited.

It is finally insisted that appellee has been guilty of laches for the reason that he permitted appellant to pay the taxes on the land for a period of more than seven years. But appellant did not record her quitclaim deed

from the bank until 1943 and this suit was not filed until August 29, 1947. Appellant did pay taxes on the NW½ of lot 4, but taxes were not due on this lot as the title was in the improvement district until sold by the district to appellee.

Appellee paid the improvement district $700 for the lots, which he testified was the highest price the improvement district had been offered for the lots. And taxes which appellant paid from December, 1938, on the NW½ of lot 4, were paid while the lot was not subject to taxes as the title was in the improvement district from 1938 to 1945 when the lot was sold by the improvement district to appellee.

The original title to these lots was in Will M. Waller and appellee has a deed from one of his three heirs. Whether the heirs who inherited the other two-thirds interest owned by their ancestor, have an interest in the land is a question unnecessary to consider.

Appellant's suit to quiet her title was dismissed as being without equity and for the reasons herein stated that decree is affirmed.

The decree required appellee to reimburse appellant for certain taxes which she paid. This finding is questioned by appellee, but may be disposed of by saying that no cross appeal has been prosecuted. It is not clear from the record for just what taxes appellant was given credit and she argues in her brief in support of her petition for rehearing that she was not allowed credit for the taxes paid on the NE 50 feet of the NW½ of lot 3. If she was not she should have been and the original opinion in this case will be modified to the extent of permitting appellant to show what taxes she paid on the NE 50 feet of the NW½ of lot 3 and to be allowed credit therefor with interest, if she has not been allowed this credit.

The decree of the court below divided the costs equally between the parties, and that decree is affirmed, including the cost of this appeal also, which with all other costs will be divided equally.

McFADDIN, J., not participating.