RINKE v. WEEDMAN.

5-2231                                             341 S. W. 2d 44

Opinion delivered December 12, 1960.

Lasley & Lovett, Gentry, Gentry & Mott, Rose, Meek, House, Barron & Nash, for appellant.

Owens, McHaney & McHaney, Frank J. Wills, for appellee.

SAM ROBINSON, Associate Justice. The issue in this case is the ownership of a tract of wild and unimproved land west of Little Rock in Pulaski County, consisting of 37.13 acres. Appellants own the land or a substantial part thereof if appellee has not acquired it by adverse possession. So there may be a clear understanding of the issues, it is necessary to mention several transactions in connection with the land which have occurred over a period of about fifty years. Prior to 1914 the land was owned by Alexander Robertson and had been platted into lots and blocks as Arkansas Heights Addition. The plat was duly recorded. Robertson let the property forfeit for general taxes for the years 1914, 1916 and 1917. Later R. M. Birnbach obtained a deed from the State to the lands and in 1921 deeded the property to R. A. Rinke and F. A. Rinke. In 1923 the land was again allowed to forfeit for taxes. F. A. Rinke was adjudged insane in 1935. R. A. Rinke died in 1939 and his widow died in 1941. In 1939 the State Land Commissioner deeded the land to appellee, Mark Weedman, and Weedman had paid taxes on it for more than seven consecutive years at the time appellants commenced this action.

Alexander Robertson died testate in 1921. His entire net estate was placed in trust, with the income therefrom to his widow, Abigail Robertson, for life, upon her death the income to be used for educational purposes known as Abigail Robertson Scholarship Trust. No children were born to Alexander and Abigail Robertson. The lands were a new acquisition and Abigail Robertson

renounced the will of Alexander Robertson, thereby acquiring a one-half interest in the Alexander Robertson estate. The Abigail Robertson Scholarship Trust is still active, and it conveyed its interest in the property to appellant, Fred Rinke, on November 21, 1958.

The parties have agreed that all the tax sales are void. Therefore, title to one-half interest in the land would be in Fred Rinke under the 1958 deed from the Abigail Robertson Scholarship Trust and title to one-half interest would be owned by the beneficiaries under the will of Abigail Robertson if Weedman has not acquired the property by adverse possession.

There are two points that need to be discussed:

First, does the deed from the State give appellee Weedman the color of title which he must have in order to successfully claim ownership by adverse possession under the provisions of Ark. Stats. § 37-102?

Ordinarily a tax deed from the State, void because a tax sale is void, nevertheless constitutes color of title. *Cayce* v. *Nordin, Trustee,* 221 Ark. 383, 253 S. W. 2d 338, and cases cited therein. A redemption of tax forfeited land, however, does not in itself constitute color of title. *Galloway* v. *Battaglia,* 133 Ark. 441, 202 S. W. 836; *Rouse* v. *Teeter,* 214 Ark. 488, 216 S. W. 2d 869. Appellants contend that Weedman is estopped to deny that he was the owner of the property at the time of obtaining the deed from the State and therefore his acquisition of the property must be considered a redemption and not a purchase.

Before Weedman obtained a deed from the State he knew the land had been platted in lots and blocks and forfeited as such because of the nonpayment of general taxes. In connection with acquiring the land from the State he engaged the services of an attorney. The attorney advised getting a deed from Mrs. Fred A. Rinke, whose husband had been declared insane in 1935. It will be recalled that in 1921 Rinke obtained title based on a tax sale and in turn had allowed the property to again

forfeit for taxes in 1923. (It will also be recalled that the parties agree that all the tax sales are void.)

Weedman did get a deed to the property from Mrs. Rinke, and acting on the theory that this deed gave him title to the property, he petitioned the county court to convert the platted property to acreage under the provisions of Act 91 of 1929 [Ark. Stats. § 19-407 *et seq.*], which would thereby enable him to redeem the property from the State for $1.00 per acre under the provisions of Act 284 of 1937 [Ark. Stats. § 10-903]. Acting on Weedman's petition, the county court did convert the platted property back to acreage and Weedman obtained a deed from the State to the property for the consideration of $1.00 per acre and other fees that are mentioned in the deed.

We need not go into the question of whether the deed from Mrs. Rinke gave Weedman color of title, because we have reached the conclusion that the deed from the State did give him color of title; hence it is immaterial whether Mrs. Rinke's deed gave him color of title. Appellants base their contention that the State's deed did not give Weedman color of title because, they say, Weedman is estopped to deny he was the owner of the property by reason of his assertion of ownership made in getting the property reduced to acreage and purchasing from the State on the theory of ownership.

The doctrine of equitable estoppel has no application because nothing that Weedman did caused appellants to act in any manner to their detriment. It is agreed that all the tax sales, including the one under which Rinke originally claimed ownership through his purchase from Birnbach, are void. And Rinke does not claim by adverse possession. It follows, therefore, that Rinke acquired no interest whatever in the property until he obtained a deed from the Abigail Robertson Scholarship Trust in 1958, and of course he obtained no interest at that time if the Trust had none to convey. And Weedman's representation that he was the owner of the property under the deed from Mrs. Rinke in no way

caused the Scholarship Trust to act to its detriment. Although the Trust has been in existence for more than 35 years, it paid no taxes on the property and did not carry it as an asset and showed no interest in the property until it gave the deed to Rinke in 1958. At one time Weedman inquired of the trust officer of the bank acting as trustee, regarding the property, and was told that the Trust owned no interest in the property.

But appellants argue that the doctrine of judicial estoppel is applicable; that once Weedman claimed in a judicial proceeding that he was the owner, he is estopped to later assert in another proceeding, where the parties are not the same, that he was not the owner at the time of his purchase from the State in 1939.

True, in petitioning the county court to reduce the lots and blocks to acreage and purchasing from the State, Weedman represented himself as owner, but we do not think these representations estop him from now showing just what the facts were in his acquisition of the property. To support their contention of judicial estoppel, appellants cite the cases of *Womack* v. *Womack*, 73 Ark. 281, 83 S. W. 937, *mod.* 83 S. W. 1136; *Robinson* v. *Cross*, 98 Ark. 110, 134 S. W. 954; *Hudson* v. *Union & Mercantile Trust Co.*, 155 Ark. 605, 245 S. W. 9. *Womack* v. *Womack* was a divorce case. Property was purchased in the wife's name, paid for by both the husband and wife. The husband asked that the deed be set aside. The Court said: "Conceding that Womack purchased the land and paid for it, and had the title taken in name of his wife, it was absolutely her property. 'If a husband purchases property, and has it conveyed to his wife, or expends money in improving her property, the advances will be presumed to be gifts. The law will not imply a promise on her part to repay him.' *Ward* v. *Ward*, 36 Ark. 586. But the facts do not justify this conclusion, for the evidence shows her work contributed at least equally to the acquisition of this property, and he has in bankruptcy proceeding treated it as hers, not his, and he cannot now be heard to say it was his. Rodgers, Domestic Rel. § 259. There can be no ques-

tion that she owned this property free of any legal, equitable, or moral obligation to convey to him.'' Thus it will be seen that the Court held in favor of the wife because she was the absolute owner of the property and not because Womack was estopped to claim ownership after asserting in a bankruptcy proceeding that the property belonged to his wife.

In the *Robinson* case the doctrine of judicial estoppel is not involved at all. In the *Hudson* case a widow alleged that certain money belonged to her husband's estate and prayed that she be allowed an interest therein. The court allowed her one-third, which she accepted. The administrator in good faith paid the balance on decedent's debts. In the circumstances it was held that the widow was estopped to claim all the money as her own property. This is clearly a case of equitable estoppel. The Court said: ''Appellant's contention is that, under the agreed statement of facts, appellee's testatrix was estopped from claiming the fund on deposit as her individual estate, and that the court erred in not dismissing the bill. We think they are correct in this contention. The doctrine of equitable estoppel has been defined by this Court as follows: . . .'' Thus it will be seen that this case went off on the proposition of equitable estoppel and not judicial estoppel. None of the above cases is authority for appellants' contention that judicial estoppel is applicable.

Appellants also cite 31 C.J.S., § 121, p. 390, to the effect that a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary of the assertion sought to be made. All of the cases cited in C. J. S. sustaining this note are from the State of Tennessee, except one case from Wyoming, *Hatten Realty Co.* v. *Baylies,* 42 Wyo. 69, 350 P. 561, 72 A. L. R. 587. There the court criticizes the holding in the Tennessee cases and cites the general rule that a position taken by a party in one suit cannot be claimed as working an estoppel in another suit in favor of a party who was a stranger to the first, but that whatever statements or admissions were made in the first can be

used as evidence only. Citing 18 Ann. Cas. 78; Ann. Cas. 1915C, 735; 28 L. R. A., N. S., 327; L. R. A. 1915A, 200; 5 A. L. R. 1505; and Wigmore on Evidence, 2d Ed., § 1064.

It is also said in 31 C. J. S., § 117, p. 373: "The doctrine of estoppel to assume inconsistent positions in judicial proceedings has been said to be one of vague application, and in many cases has been held inoperative, or has not been applied, under the particular facts and circumstances involved." Dozens of cases from numerous states are cited to support the text, and it is further stated, at page 381: "For this doctrine [doctrine of judicial estoppel] to be applied, it is commonly required that the parties be the same, and that the same questions be involved."

In the case at bar appellants were not parties to Weedman's petition to reduce the lots and blocks to acreage, nor parties in his purchase from the State. No theory of equitable estoppel is involved, and the doctrine of judicial estoppel is not applicable.

The next point for consideration is appellants' contention that Weedman did not pay the taxes on a description that would constitute notice to the owners. The land was described in the deed from the State to Weedman as follows: "All that part of the Southeast Quarter of the Northwest Quarter containing Twenty-three and 31/100 (23.31) acres, and All that part of the North Half of the Northeast Quarter of the Southwest Quarter, containing thirteen and 82/100 (13.82) acres, and containing, in the aggregate, Thirty-seven and 13/100 (37.13) acres, all in Section Three (3), in Township One (1) North, of the Base Line, in Range Thirteen (13) West of the Fifth Principal Meridian in Arkansas, which were forfeited and sold to the State of Arkansas, at a County Tax Collector's Sale for non-payment of the taxes due thereon for the year or years set forth below, as lots and blocks in Arkansas Heights Addition to the City of Little Rock, Arkansas, . . ." Then follow the lot and block numbers in Arkansas Heights Addition, and the dates of forfeiture.

Weedman filed his deed for record, and the property was extended on the records of the County and Weedman paid taxes under the following descriptions:

From 1939 through 1954 the property was described as:

"That pt. SENW cont. 23.31 A and pt. n 1/2 NESW cont. 13.82 A formerly platted as pt. Ark. Heights, Sec. 3-1N-13W"

and from 1955 to the present time it was described as:

"Pt. SENW Cont. 23.31 ac. & Pt. N 1/2 NESW cont. 13.82 ac. formerly platted as Pt. Ark. Hgts. 3-1N-13W".

It is conceded that the deed from the State to Weedman, which he recorded, contains a valid description of the lands involved in this litigation. The question is whether the taxes were paid on a description which would constitute notice to those who owned the property at the time of the forfeiture that someone was paying taxes on the property. Of course, such former owners knew that they had paid no taxes on the property for more than 35 years. If appellants had been interested in the land in the least bit and had made any investigation to determine what was the tax situation, they would have seen at once that Mark Weedman was paying taxes on 37.13 acres located in the SE 1/4 of the NW 1/4 and Pt. of the N 1/2 of the NE 1/4 of the SW 1/4, in Section 3, Township 1 N., Range 13 W., formerly platted as part of Arkansas Heights Addition; and the recorded deed from the State to Weedman would have given them the lot and block numbers of the lots described on the plat which the State conveyed to Weedman.

In *Junction City Special School District No. 75 v. Whiddon*, 220 Ark. 530, 249 S. W. 2d 990, the State had deeded tax forfeited land to McWilliams and Whiddon, such land being described in the deed as Frl. NW 1/4 of the NW 1/4, Sec. 28, T. 19 S., R. 16 W., containing 35 acres more or less. Previously five acres in the quarter section had been conveyed to the school district under

a definite and proper description. The Court said: "While the description under which appellees claimed was faulty, it was evident that they were claiming all that remained of the NW 1/4 of the NW 1/4 of section 28, township 19, range 16 west, 35 acres, after appellant's 5-acre tract had been carved out of that 40 acres under a definite correct metes and bounds description, which located the 5 acres in the NW corner of the NW 1/4 of section 28, township 19, range 16 west, etc. We think this was sufficient to identify this 35 acres claimed by appellees and entitled them to the benefits of § 37-103."

In the *Whiddon* case, one would have to examine the recorded deed to the five acres to determine the exact 35 acres on which McWilliams and Whiddon were paying taxes. Such determination could not be made from the deed from the State to McWilliams and Whiddon, but in the case at bar one would have to look no further than Weedman's recorded deed from the State to determine the exact location of the land on which he was paying taxes. In the *Whiddon* case this Court quotes from 132 A. L. R. 227, as follows: " 'If the taxes as to the particular land claimed adversely are in fact paid, the fact that such land has not been accurately described in the assessment or the tax receipts will not affect the efficacy of the payment as a compliance with the statute,' " and further quoted from 2 C. J. 209, as follows: " 'One who, under color of title acquired in good faith, has paid the taxes actually assessed against land is entitled to the benefit of the statute, notwithstanding the land may have been misdescribed in the tax receipts, and provided he is able to remove the uncertainty by extrinsic evidence.' " And the Court quoted from 2 C. J. S. 749: " '. . . if claimant pays the taxes on the land actually claimed, the fact that the land was misdescribed in the assessment or in the tax receipts is immaterial.' "

In support of the contention that the description on which Weedman paid taxes for so many years is insufficient to base a claim of seven years adverse possession under color of title, appellants cite *Boynton* v. *Ashabranner*, 75 Ark. 415, 88 S. W. 566, 88 S. W. 1011, 91

S. W. 20; *Phillips* v. *Michel,* 217 Ark. 865, 233 S. W. 2d 551; and *Darr* v. *Lambert,* 228 Ark. 16, 305 S. W. 2d 333; but in all of these cases the description under which the taxes were paid furnishes no clue leading to a correct description that might be determined from the records.

Finding no error, the decree is affirmed.

GEORGE ROSE SMITH, J., concurring. Inasmuch as my joinder in the court's opinion appears to be at variance with my practice of not participating in cases wherein my former law partners appear as counsel, it is appropriate for me to explain that the attorneys on both sides requested that I take part in this case. In such circumstances I of course have no hesitancy in participating in the court's consideration of the case.