Sherman **JOHNSON**, Plaintiff,

v.

**DAGGETT, VAN DOVER, DONOVAN & PERRY, PLLC, and Jesse B. Daggett, Defendants.**

**No. 4:99CV00417 WRW.**

United States District Court, E.D. Arkansas, Little Rock Division.

May 9, 2000.

Philip M. Wilson, Little Rock, AR, Roy C. Dripps, The Lakin Law Firm, Wood River, IL, for Plaintiff.

Edwin L. Lowther Jr., Wright, Lindsey & Jennings, Little Rock, AR, B. Michael Easley, Easley, Hicky, Cline & Hudson, Forrest City, AR, Don S. McKinney, Adams and Reese LLP, New Orleans, LA, for Defendants.

## *ORDER*

WILSON, District Judge.

This is a legal malpractice action regarding professional services rendered in a maritime lawsuit. Defendants represented Plaintiff in an action regarding injuries he sustained while working on a barge. Plaintiff contends Defendants did not sue all potentially responsible parties.

Defendants have moved for summary judgment on the issues of judgmental immunity, judicial estoppel, absence of genuine issue of material fact, and collateral estoppel. Plaintiff has responded, and Defendants have filed a reply brief. At the request of the Court, the parties have also filed supplemental letter briefs. For the reasons set forth below, Defendants' Motion for Summary Judgment is DENIED.

Plaintiff has moved for partial summary judgment on three issues: (1) statute of limitations; (2) validity of a release; and (3) seaworthiness of the vessel on which he was injured. Defendants have responded. For the reasons set forth below, Plaintiff's motion regarding the statute of limitation is GRANTED in part and DENIED in part: Plaintiff's motion regarding the validity of the release is GRANTED; and

Plaintiff's motion regarding seaworthiness is DENIED.

## I. Background

Plaintiff Sherman Johnson was employed as a deckhand aboard the M.V.J.O. Bradford (the "Bradford"), a towboat owned and operated by Jantran, Inc., Plaintiff's employer. On July 30, 1994, Plaintiff was awakened by another deckhand, L.C. Ross, to assist with a double cut at Arkansas River Lock & Dam 13, near Fort Smith.

A double cut requires that a load of barges be broken into two parts, or "cuts," of six barges each. This, in turn, enables each cut to pass through the lock separately. If the tow is headed downstream, as it was in this case, one cut is secured upstream while the other is placed in the lock, lowered, and then secured to the long wall on the downstream side of the dam. Once the first cut is lowered and secured, the towboat goes back into the lock to retrieve the second cut. The second cut is lowered through the lock, and then the two cuts are reconnected and the fleet proceeds down the river.

Plaintiff went through the lock on the first cut and, after it was secured to the long wall, remained alone on the first cut while the towboat and remaining crew went to retrieve the second cut. Plaintiff's job was to ensure that the first cut remained secured until the process was completed.

While the second cut was being lowered through the lock, the ropes securing the first cut broke and the barges began moving along the long wall. Plaintiff attempted to resecure the first cut to the wall, but he became entangled in the ropes. His leg was pulled against the kevel and amputated below the knee.

Plaintiff retained the services of Jesse B. Daggett and Daggett, Van Dover, Donovan & Perry, PLLC, defendants in this action, to represent him with respect to the injuries he sustained. Defendants filed a complaint on Plaintiff's behalf against the United States. They alleged that the Corps of Engineers' lock operator lowered the second cut at an excessive rate, causing turbulence, which in turn caused the rope on the first cut to break and caused the rope to tighten around Plaintiff's leg and pull him into the kevel. Defendants did not file an action against Jantran, Plaintiff's employer. Plaintiff's action against the United States, which he lost, was tried in October of 1997.

Plaintiff filed this case on June 11, 1999, alleging that Defendants should have sued Jantran, and that their failure to do so constitutes malpractice.

## II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart,* 813 F.2d 874 (8th Cir.1987); Fed.R.Civ.P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *See Inland Oil & Transport Co. v. United States,* 600 F.2d 725 (8th Cir.1979), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. MK–Ferguson Co.,* 862 F.2d 1338 (8th Cir.1988):

[T]he burden on the moving party for summary judgment is only to demonstrate, i.e., '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 273–274 (8th Cir.1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### III. Defendants' Motion for Summary Judgment

#### A. Judgmental Immunity

■ The Arkansas Supreme Court has stated:

An attorney is negligent if he or she fails to exercise reasonable diligence and skill on behalf of the client.... In order to prevail on a claim of legal malpractice, a plaintiff must prove that the attorney's conduct fell below the generally accepted standard of practice and that such conduct proximately caused the plaintiff damages.

*Pugh v. Griggs,* 327 Ark. 577, 581, 940 S.W.2d 445, 447 (1997). However,

An attorney is not liable to a client when, acting in good faith, he or she

makes mere errors of judgment.... Moreover, attorneys are not, as a matter of law, liable for a mistaken opinion on a point of law that has not been settled by a court of highest jurisdiction and on which reasonable attorneys may differ.

*Id.* at 581–82, 940 S.W.2d at 447. This defense is often referred to as "judgmental immunity."

■ Defendants contend that they are entitled to summary judgment because the decision not to sue Jantran was a judgment call made in good faith.[1] They claim that Plaintiff told them not to sue Jantran, and that their subsequent research and fact investigation supported that decision.

Plaintiff has provided an affidavit of an expert, Sandor Korein, who says that the proper standard which should have been exercised by Defendants in a case involving maritime law included the following obligations:

1) To investigate fully and adequately all possible claims of Plaintiff against all potentially responsible parties, including Jantran;

2) To advise Plaintiff of the scope of his employer's legal duty, including that the employer has a non-delegable duty to provide a safe place to work and that "fault" is a concept completely divorced from Plaintiff's claim for unseaworthiness and the absence of "fault" did not preclude a substantial recovery by Plaintiff against Jantran;

3) To inform Plaintiff of the results of that investigation at least in sufficient time to file a suit before the statute of limitations ran; and

4) To sue Jantran *or* to obtain Plaintiff's written informed consent not to institute such suit.

---

1. Defendants do not contend they are protected under the judgmental immunity provided for mistaken opinions on points of law that have not been settled by a court of highest jurisdiction and on which reasonable attorneys may differ.

*See* Affidavit of Sandor Korein, Exhibit 3 to Plaintiff's Response to Defendants' Motion for Summary Judgment.

Mr. Korein concluded that Defendants breached the standard of care. He states that Defendants failed to obtain the *informed consent* of Plaintiff by failing to investigate in any meaningful manner the potential claim against Jantran and by failing to provide that information to Plaintiff. With regard to Plaintiff's early instruction not to sue Jantran, Mr. Korein stated that "[c]hoosing to rely on the Plaintiff's perception of the legal responsibility of the employer is to abdicate the professional trust reposed in the attorney by the client." *Id.*

In support of their position, Defendants cited *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997), where Ms. Pugh's former attorney nonsuited a medical malpractice claim and failed to refile the claim until after the one year savings clause had run. Ms. Pugh sued her former attorney for negligence in failing to prosecute the first lawsuit.[2] The Supreme Court held that, pursuant to Arkansas Rule of Civil Procedure 41, the decision to take a nonsuit was clearly within the attorney's discretion. *See id.* *Pugh* is a recognition that, under Arkansas law, an attorney may nonsuit a medical malpractice case for any reason. It does not stand for the proposition that the choice of whom to sue is left completely to the discretion of the attorney.

Defendants also argue that *Schmidt v. Pearson, Evans and Chadwick*, 326 Ark. 499, 931 S.W.2d 774 (1996), supports the conclusion that an attorney may choose which parties to sue. In *Schmidt*, the attorneys did not timely request that stockholders of the plaintiff corporation be added to the complaint as guarantors of

the corporation. The court applied judgmental immunity. However, the *Schmidt* court based its holding, not upon a finding that this was a judgment call made in good faith, but rather that it involved an unsettled legal issue and was an issue over which "experts could reasonably disagree." *See id.*

In *Mills v. Cooter*, 647 A.2d 1118 (D.C.App.1994), the Mills hired Cooter to represent them in a suit against Edgar Weisman over a real estate transaction. Cooter and the Mills discussed the pros and cons of suing a number of defendants, including two realtors. Cooter believed there was no evidence against the realtors and that the realtors were not agents of the Mills and thus owed no duty to them. Cooter clearly explained his position to the Mills. The court specifically noted that there was no doubt the Mills misunderstood his position, and the Mills did not attempt to secure other counsel.

The court concluded "that where, as here, Cooter's unwillingness to sue the brokers was communicated to the Mills early in the representation, well before the expiration of the statute of limitations, and where reasonable attorneys could differ with respect to the legal issues presented, the second-guessing after the fact of Cooter's professional judgment was not a sufficient foundation for a legal malpractice claim, and that the evidence was insufficient to support a verdict for the Mills." *Id.* at 1121. Here, Plaintiff contends that Defendants' unwillingness to sue was not communicated sufficiently and that Plaintiff did not make an informed decision.

In *Gans v. Mundy*, 762 F.2d 338 (3d Cir.1985), the Third Circuit, applying Pennsylvania law, upheld the district court's grant of summary judgment to an

---

2. She also sued for negligence in failing to timely refile her complaint within the one year. The Supreme Court had not previously addressed whether the one year filing period was extended by the notice requirement in medical malpractice cases. The court granted judgmental immunity because this was an

unsettled question of law at the time the defendants made their decision, and it was one over which reasonable attorneys could differ. *Pugh*, 327 Ark. at 577, 940 S.W.2d at 445. As noted earlier, Defendants here do not contend their decision involved an unsettled question of law.

attorney who chose not to sue a potential party in a personal injury case. The court found that the defendants met their burden of showing the conduct met the appropriate standard of care, and that the plaintiff failed to respond with expert evidence showing the standard of care was different. Therefore, the court had to analyze the defendants' behavior to see if the lack of skill was so obvious that it was within the range of the ordinary experience and comprehension of non-professional persons. It found the evidence of negligence was too speculative to establish any material fact that the defendants' actions revealed an obvious lack of skill. Here, however, Plaintiff has provided an expert who avers that Defendants clearly did not meet the appropriate standard of care.

In *Cellucci v. Bronstein*, 277 N.J.Super. 506, 649 A.2d 1333 (N.J.1994), a lawyer determined that his client's intoxication was the cause of the accident and, therefore, decided to pursue a worker's compensation claim rather than a tort claim. The court applied the defense of judgmental immunity and held that a lawyer is not liable for an error in judgment as long as he has a reasonable knowledge of the law and applies it to the relevant facts. Here, Plaintiff argues that Defendants did not have a reasonable knowledge of the law.

Based on Mr. Korein's affidavit, Plaintiff has raised a genuine issue of fact regarding whether Defendants' decision not to sue Jantran was made after an adequate factual investigation and reasonable legal research. Accordingly, Defendants' Motion for Summary Judgment is DENIED on this point.

### B. Judicial Estoppel

#### 1. State Law or Federal Law

■ Defendants argue that Plaintiff should be judicially estopped from taking positions which are inconsistent to positions he took in the underlying action. The Eighth Circuit recognizes the doctrine of judicial estoppel. *See Hossaini v. Western Missouri Medical Center*, 140 F.3d 1140, 1142–43 (8th Cir.1998); *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 n. 6 (8th Cir.1987); *Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 609 (8th Cir.1993).

The parties differ, however, regarding whether state law or federal law must be applied.[3] Where the first and second lawsuits were both based on federal question jurisdiction, the Eighth Circuit has applied federal law. *See Hossaini v. Western Missouri Medical Center*, 140 F.3d 1140, 1142–43 (8th Cir.1998). Where the first lawsuit was in state court and the second lawsuit was in federal court based on diversity jurisdiction, the Eighth Circuit has applied state law. *See Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 608 (1993).

Here, however, the underlying action was tried before a federal court on federal question jurisdiction and the present action is before this Court on diversity jurisdiction. The Eighth Circuit has addressed a similar situation with regard to the doctrines of res judicata and collateral estoppel in *Poe v. John Deere Co.*, 695 F.2d 1103 (8th Cir.1982).

In *Poe*, the first lawsuit was tried in federal court based on federal question jurisdiction. The second lawsuit was tried in federal court based on diversity jurisdiction. The Eighth Circuit held that federal law governed. *See id.* at 1105. The court stated the rule clearly in *Follette v. Wal-Mart Stores, Inc.*, 41 F.3d 1234, 1237 (8th Cir.1994). "When a federal court is sitting in diversity, the preclusive effect of a prior judgment is determined by the preclusion rules of the forum which provided the sub-

---

**3.** Under Arkansas law, judicial estoppel applies only where the parties are the same in both actions. *See Rinke v. Weedman*, 232, Ark. 900, 906, 232 Ark. 900, 341 S.W.2d 44, 48 (1960). Thus, under Arkansas law, judicial estoppel could not apply here because Defendants were not parties in the underlying lawsuit.

stantive law underlying that prior judgment." *Id.* (citations omitted).

The first case here was tried before a federal court based on federal question jurisdiction. The court sees no reason why the same rules that apply to res judicata and collateral estoppel should not apply to judicial estoppel. Thus, applying the rule from *Follette, supra,* federal law regarding judicial estoppel will be applied in this case.[4]

### 2. What Is the Federal Rule Regarding Judicial Estoppel?

■ "The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation." *Hossaini v. Western Missouri Medical Center,* 140 F.3d 1140, 1142 (8th Cir.1998) (citations omitted). Judicial estoppel requires that a party's position or statements be clearly inconsistent with his prior position or statements. *See Hossaini,* 140 F.3d at 1142–43.

■ Defendants argue that Plaintiff is taking positions and making statements now which are clearly inconsistent to those he took in the earlier action. Plaintiff argues they are not inconsistent and that he is simply telling the truth in light of additional information which came to his attention at and after the trial of the underlying action.[5] He argues that Defendants' inadequate representation prevented him from learning these things prior to the first trial.

In the first trial, Plaintiff testified that a radio would have been no help in preventing the accident because he would not have been able to get it off his side. *See* August 22, 1996 Deposition of Johnson, p. 111–12. This testimony appears to have been given in the context of whether a radio would have helped after the lines broke and Plaintiff was caught by the rope. Plaintiff testifies now that he learned at trial that L.C. Ross, another deckhand, had "enough time to talk to the captain [on the radio] so that means I would have too."

> I also learned that you was supposed to have a radio. This would have made a difference because it would have been two people telling the captain that their lines were about to break. Maybe he would have done something. Also he could have told me what to do after they broke.

This testimony appears to relate to whether a radio would have been of any assistance before the ropes broke and before Plaintiff was entangled in them. This testimony is not clearly inconsistent. Therefore, judicial estoppel does not apply.

In the underlying action, Plaintiff testified regarding his training and experience. *See* Trial transcript, October 8, 1997, pp. 5–9. The training he discussed, however, related to how to work the ropes and perform double cuts in general. He claims now that his training was not sufficient because he was never trained on how to recapture barges. This is different training and the testimony is not clearly inconsistent.

---

4. Plaintiff cites *Lampl v. Smith,* 169 B.R. 432, 435 (D.Col.1994), for the proposition that state law should govern judicial estoppel in diversity actions even where the original action was based on federal question jurisdiction. However, in reaching its decision, the *Lampl* court observed that the Tenth Circuit (of which it is a member) does not recognize the doctrine of judicial estoppel. *See id.* at 434–35. Because the Eighth Circuit explicitly recognizes the doctrine of judicial estoppel, the *Lampl* case is not persuasive authority.

5. Plaintiff testified in the initial suit that the boat being short a deckhand and operating on

call watch had nothing to do with the accident. *See* Trial Transcript p. 16. In this suit, he claimed that the absence of a deckhand and the operation of call watch caused him to be fatigued and contributed to the accident. *See* Plaintiff's Response Brief, p. 26. However, in Plaintiff's letter brief, dated April 24, 2000, Plaintiff gave notice that he was withdrawing any claim of employer negligence based on his level of rest. Therefore, it is unnecessary for the Court to determine whether these statements by Plaintiff were inconsistent.

Plaintiff testified in the initial suit that the ropes in use at the time of the accident were brand new lines, and that there was nothing wrong with them. *See* Trial transcript, 10–8–97, pp. 16–17. Now, Plaintiff alleges that, while the ropes were new, they were unsuitable for use in the lock procedure. *See* Plaintiffs Answers to Defendant's Second Set of Interrogatories and Request for Production. Plaintiff appears to contend that the rope may have been improperly spliced. While the Court believes this testimony is close, it finds that is not clearly inconsistent Plaintiff did not specifically testify in the underlying case about whether the splicing of the ropes was adequate.

Because these statements are not clearly inconsistent, Defendants' Motion for Summary Judgment on the issue of judicial estoppel is DENIED.[6]

## C. Absence of Genuine Issue of Material Fact

 Defendants argue that Plaintiff cannot create a genuine issue of material fact by submitting testimony that contradicts his own earlier testimony. For this proposition, they cite *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir.1983).

In *Camfield Tires,* plaintiff was examined at length in a deposition and testified that he had given a check to the defendant with an instruction not to deposit it until a certain date. A year later, in a response to a motion for summary judgment, he provided an affidavit stating that he had instructed the defendant to return the check to him and not to deposit it. These contradictory statements were given within the same lawsuit. The court found that the statements in the affidavit were in direct conflict to his earlier deposition testimony. The court further found that the plaintiff had not offered any circumstances

such as confusion or mistake, that would explain why he directly contradicted his prior deposition. The court concluded that "[a] party should not be allowed to create issues of credibility by contradicting his own earlier testimony." *Id.* at 1365–66.

The Eighth Circuit was careful to limit its holding, noting "only in circumstances such as this where the conflicts between the deposition and affidavit raise only sham issues should summary judgment be granted." *Id.* at 1366.

The statements at issue here were given in two different cases. This does not fit within the rule of *Camfield Tires.* This situation is better dealt with through the Rules of Evidence, which allow the use of contradictory statements for impeachment, and doctrines such as judicial estoppel and collateral estoppel. Defendants' Motion for Summary Judgment on this point is DENIED.

## D. Collateral Estoppel

 "When a federal court is sitting in diversity, the preclusive effect of a prior judgment is determined by the preclusion rules of the forum which provided the substantive law underlying that prior judgment." *Follette,* 41 F.3d at 1237. As already observed, the underlying case here was tried in federal court, based on federal question jurisdiction. Thus, federal law applies to the issue of collateral estoppel in the present case.

 The federal doctrine of collateral estoppel requires: (1) the issue be identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or was in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard. *See Oldham v. Pritchett,* 599 F.2d 274, 279 (8th Cir.1979).

---

**6.** While the Court finds that none of the above statements are clearly inconsistent for purposes of applying the doctrine of judicial estoppel, it specifically does not rule on the issue of whether these statements are inconsistent for purposes of admission of evidence under the Rules of Evidence.

■ Defendants argue Plaintiff should be estopped from presenting evidence on three issues: (1) Plaintiff's experience and training; (2) the experience and training of the crew on the Bradford; and (3) the presence of a "surge back," or turbulence, which he was not adequately informed of by Jantran. Plaintiff argues the issues are not identical and a final judgment was not entered on the merits of these issues.

As discussed above, the issue of Plaintiff's training for and experience with recapturing barges is different (and much more specific) than his training in performing double cuts.

Even though it was discussed and considered by the Judge in the underlying case, the court below made no actual finding about the training and experience of the crew on the Bradford. The court found that the Bradford crew knew the proper protocol and procedure for a double cut operation, *see* Ruling of the Court, Oct. 8, 1997, Exhibit 15 to Defendants' Motion for Summary Judgment, pp. 20–22, but the court made no finding with regard to their actual experience with the procedure or, more specifically, with recapturing barges.

Likewise, the lower court made no actual finding that Plaintiff was not adequately informed of the presence of a "surge back," or turbulence, by Jantran. The court found that turbulence was not unexpected, but it made no finding regarding whether Plaintiff was adequately informed about the turbulence. *See* Ruling of the Court, Oct. 8, 1997, pp. 20–22.

The issues are not identical to those determined in the prior adjudication, and a final judgment was not rendered on the merits of these issues. Therefore, Defendants' Motion for Summary Judgment on this issue is DENIED.

## IV. Plaintiff's Motions for Partial Summary Judgment

### A. Statute of Limitations

The general rule is that a claim for maritime personal injuries must be filed within three years of the injury. *McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958). Plaintiff was injured on July 30, 1994. Thus, Plaintiff contends that all his causes of action against Jantran expired on July 30, 1997.

Defendants concede the statute of limitations regarding any Jones Act and seaworthiness claim against Jantran have expired. To that extent. Plaintiff's Motion for Partial Summary Judgment is GRANTED.

■ Defendants contend, however, that a cause of action for maintenance and cure has not expired. An employer's obligation to provide maintenance and cure is a continuing one.

> The ship owner's obligation to furnish the seaman who becomes ill or injured in the service of the vessel without willful misbehavior on his part with wages and maintenance and cure is a continuing obligation. The obligation is not limited to a fixed time, but may continue after the termination of the voyage in which an injury was sustained or where an illness began and extends to the point where the maximum degree of cure has been reached.

2 Martin J. Norris, *The Law of Seamen*, Section 26:29 (4th ed.1985); *Calmar SS Corp. v. Taylor*, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938). This continuing obligation is similar to a party's obligation to perform under a contract. A right of action under a contract usually arises at the time of the breach of the agreement. *See* 51 Am.Jur.2d. *Limitation of Actions*, § 126.

■ Defendants contend that Jantran has not failed in its obligation to provide maintenance and cure, but has offered to provide cure to Plaintiff as recently as April 2, 1998.[7] Defendants have set forth

---

7. Defendants argue that the three year statute

of limitations does not apply to claims for

sufficient evidence and facts to show that there is a genuine dispute of material fact on this issue. Accordingly, Plaintiff's Motion for Partial Summary Judgment on the issue of whether Plaintiff's cause of action for maintenance and cure against Jantran has expired is DENIED.

### B. Validity of Release

On November 2, 1994, Jantran procured a document from Plaintiff which purported to be a release of claims. Plaintiff claims he was unaware of the document's contents at the time he signed it and he believed it was simply a loan receipt.

Plaintiff contends the release is voidable. Defendants do not dispute this. *See* Doc. No. 29. Therefore, Plaintiff's Motion for Partial Summary Judgment on this issue is GRANTED.

### C. Seaworthiness

■ Plaintiff was injured after the lines which held his barges to the long wall broke. Plaintiff argues this made the vessel unseaworthy as a matter of law. Defendants disagree.

In *Allen v. Seacoast Products, Inc.*, 623 F.2d 355 (5th Cir.1980), the plaintiff lost an eye while assisting in the salvage of a partially sunken shrimping boat. Two mooring lines had been strung from plaintiff's vessel to the shrimper. Plaintiff's vessel began to back on the lines to test the shrimping boat's floatation. One of the lines broke, sprung back, and struck the plaintiff.

The Fifth Circuit said "[i]t is established beyond question that misuse of even non-defective, otherwise seaworthy equipment may nevertheless create an unseaworthy condition." *Id.* at 360–61. The court found that this was a misuse of the mooring lines, and held that the vessel was unseaworthy.

Here, Defendants point to evidence that the ropes were being used for their proper purpose. This is sufficient to show a genuine dispute of material fact regarding whether the lines were being misused.

Plaintiff argues that if the ropes were not inappropriate for the use to which they were put, then they failed in their ordinary use. Plaintiff argues this makes the vessel unseaworthy as a matter of law. For this proposition, he cites *Gibbs v. Kiesel*, 382 F.2d 917 (5th Cir.1967). In *Gibbs*, the Fifth Circuit held that when the vessel owner provides equipment such as a rope or cable which fails in its ordinary intended use, the equipment is, as a matter of law, unseaworthy. However, there was no evidence in *Gibbs* which would explain the failure of the equipment other than to attribute it to unseaworthiness. In fact, the court applied the doctrine of *res ipsa loquitur*.

The Fifth Circuit later limited its holding in *Gibbs* and expressed a reluctance to apply the doctrine of *res ipsa*. *See Rabb v. Canal Barge Co.*, 428 F.2d 201 (1970) (distinguishing *Gibbs* ) Further, the *Gibbs* court noted, in approving the use of the doctrine of res ipsa, that "the logical inference is often that the gear or appurtenance would not have broken had it not been defective." *Gibbs*, 382 F.2d at 919.

The Fourth Circuit has held that "[t]he mere happening of an accident, however, does not give rise to a *res ipsa* inference of negligence or breach of duty under the Jones Act or general maritime law." *See Estate of Larkins by Larkins v. Farrell Lines, Inc.*, 806 F.2d 510, 512 (4th Cir. 1986) (citing *Kiesel v. American Trading Production Corp.*, 347 F.Supp. 673, 678–79 (D.Md.1972), *see, e.g., Ursich v. da Rosa*, 328 F.2d 794 (9th Cir.1964)), *Pashby v. Universal Dredging Corp.*, 608 F.2d 1312 (9th Cir.1979).

---

maintenance and cure and Plaintiff is not time barred. However, even if it does apply, Defendants argue the time has not begun to run. Either way, Plaintiff's cause of action arguably has not expired. Therefore, the Court declines to rule on whether the three year time period applies.

Here, Defendants point to evidence that there were causes for the ropes to break other than unseaworthiness. In particular, they point to evidence that the pressure placed on the barge by the Corps' dumping of the water created unexpected conditions. This is sufficient to show a genuine dispute of material fact regarding whether the lines were unseaworthy. *Cf. Irwin v. United States,* 236 F.2d 774 (2d Cir.1956) (finding a "freak swell" of the sea caused the accident without any fault on the part of the ship).

Accordingly, Plaintiff's Motion for Partial Summary Judgment on the issue of unseaworthiness is DENIED.

## V. Conclusion

For the above stated reasons, Defendant's Motion for Summary Judgment is DENIED, Plaintiff's Motion for Partial Summary Judgment on the issue of Statute of Limitations is GRANTED in part and DENIED in part, Plaintiff's Motion for Partial Summary Judgment on the issue of the validity of the release is GRANTED, and Plaintiff's Motion for Partial Summary Judgment on the issue of unseaworthiness is DENIED